UNITED STATES of America,
Appellant,

v.

Terry C. CARR and Mark Todd Carr,
Defendants, Appellees.

No. 90–2137.

United States Court of Appeals,
First Circuit.

Heard March 7, 1991.

Decided May 6, 1991.

---

Cerise Lim–Epstein, Asst. U.S. Atty., with whom Wayne A. Budd, Boston, Mass., U.S. Atty., was on brief, for the U.S.

Robert D. Richman, Boston, Mass., Federal Defender Office, for appellee Terry C. Carr.

Margaret H. Carter, Salem, Mass., with whom James L. Sultan and Rankin & Sultan, Boston, Mass., were on brief, for appellee Mark Todd Carr.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The United States appeals from the district court's judgment sentencing defendants-appellees Terry C. Carr and her husband Mark Todd Carr. The government argues that the district court's downward departure from the Sentencing Guidelines' range was improper. The Carrs pled guilty to charges of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341, for their alleged participation in a scheme to defraud the Liberty Mutual Insurance Company by submitting fraudulent claims. The government, pursuant to the plea agreement, recommended the least restrictive sentence within the Guidelines for both defendants. At sentencing on July 10, 1990, the probation officer found the applicable Guidelines' range for Terry Carr to be 15–21 months and 12–18 months for Mark Carr. The probation officer recommended enhancement of Terry Carr's sentence for being an "organizer, leader, manager or supervisor." The district court agreed with the government that Terry Carr was not such a leader, and thus concluded that the Guidelines' range for her should be 10–16 months. Defendants requested a downward departure based on their responsibilities to their four-year-old son, Patrick. The district court departed downward and sentenced Terry Carr to a community treatment facility for ten months and Mark Carr to five months in prison and five months in a community treatment facility.[1] The dis-

---

1. The district court stated as its reasons:

   I am going to go along with suggestions that have been made by defense counsel, because I think that they are called for in this case. So I'm going to have a downward departure as suggested by Mr. Richman and as suggested by Mr. Sultan, because I still think it's fair compared to what I have done with other people.

   In a nutshell, here is what I think we ought to do. I think we ought to require Mrs. Carr to spend the entire ten months in a treatment center, preferably one that is in the southeastern United States so that she may be near the child. And as a reason for the downward departure, obviously I'm using that which was suggested by Mr. Richman, that is the family responsibility for the child.

trict court also imposed on each defendant a twenty-four month period of supervised release and ordered payment of restitution not to exceed $20,000 and special assessments of $500.

The government contends that the circumstances on which the district court relied—the sentence's fairness in comparison with other sentences imposed by the court and the defendants' family responsibilities to their four-year-old son—do not constitute legitimate grounds for a downward departure. See United States v. Diaz–Villafañe, 874 F.2d 43 (1st Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The defendants respond that this court does not have jurisdiction to hear this appeal because the government did not file its notice of appeal until September 21, 1990, forty-one days after August 10, 1990 —the date the judgments including sentences were entered on the criminal docket. Fed.R.App.P. 4(b) provides that the government's notice of appeal must be filed "within 30 days after the entry of . . . the judgment or order appealed from. . . ." [2] To this jurisdictional challenge, the government replies that it filed a "Motion for Reconsideration of Sentencing" on July 31, 1990,[3] and that the pendency of this motion rendered the docketed judgments including sentences nonfinal, for purposes of commencing the thirty-day period for filing its appeal, until the district court summarily denied the motion on August 27, 1990. See United States v. Dieter, 429 U.S. 6, 8, 97 S.Ct. 18, 19, 50 L.Ed.2d 8 (1976) (per curiam) (involving appeal from order dismissing indictment). Under this theory, the thirty-day period prescribed in Fed.R.App.P. 4(b) began running only on August 27, 1990. The government's notice of appeal from both the sentences and the denial of the motion for reconsideration was filed

less than thirty days later. Defendants counter that, under the recently amended Fed.R.Crim.P. 35, and also under 18 U.S.C. § 3582(c), the district court lacked jurisdiction to entertain the government's motion for reconsideration once judgment was entered. The fact that the motion remained unresolved on August 10, 1990, therefore, did not render the judgments non-final when docketed on that date.

## I.

We turn first to the question of whether the government's appeal was timely. We hold that it was.

Congress amended Fed.R.Crim.P. 35 as part of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 215(b), 98 Stat. 1837, 2015. Prior to the Sentencing Reform Act, Rule 35(a) permitted the district court to correct an illegal sentence at any time. The Sentencing Reform Act repealed this provision and the current Rule 35(a) now expressly authorizes the court to correct a sentence only on remand after the court of appeals determines that the sentence was imposed in violation of law or as the result of an incorrect application of the Sentencing Guidelines. The legislative history states that Rule 35 was amended "in order to accord with the provision of proposed section 3742 of title 18 concerning appellate review of sentence." S.Rep. No. 225, 98th Cong., 2d Sess. 158, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3341. Defendants argue that the change effectively withdrew from the district court all power to reconsider and modify a sentence once imposed (i.e., from the time docketed). See United States v. Cook, 890 F.2d 672, 674–75 (4th Cir.1989). The sentencing statute, 18 U.S.C. § 3582(c), lends

---

With respect to Mr. Carr, also, I would like to keep the family together, so that I'm going to go along with the suggestion of Mr. Sultan. I don't think it's something that was thoroughly considered by the sentencing commission. . . . I'm not imposing any fine in these cases. And I think that since the probation officer will be overseeing the ability of people to pay that restitution that this is a fair outcome when I compare it to sentences that I've given in other cases.

2. Fed.R.App.P. 4(b) provides that a judgment or order is entered within the Rule's meaning when entered in the criminal docket.

3. The government's Motion for Reconsideration was filed in the interim between the district court's pronouncement of sentence on July 10, 1990 and the entry of the court's judgments and sentencing orders on the docket a month later.

some support to this argument in respect to sentences to prison: "The court may not modify a term of imprisonment once it has been imposed," except in limited circumstances not relevant here.

Despite the above changes, the government contends that the district court nevertheless retains some inherent power to correct sentences—and that we should, therefore, continue to apply the well established rule that, where a timely reconsideration motion was filed, the thirty-day appeal period did not begin to run until the denial of the motion. *United States v. Dieter*, 429 U.S. at 8, 97 S.Ct. at 19. In *Dieter*, a pre-guideline case, the Supreme Court unanimously reaffirmed its ruling in *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964), that the dispositive date for commencement of the relevant appeal period was the date when a timely rehearing petition in the district court was denied, rather than the date of the order itself. The Court explained as follows:

> The Court of Appeals misconceived the basis of our decision in *Healy*. We noted there that the consistent practice in civil and criminal cases alike has been to treat timely petitions for rehearing as rendering the original judgment nonfinal for purposes of appeal for as long as the petition is pending. 376 U.S., at 78–79 [84 S.Ct., at 555–556]. [footnote 3 in original: The Court of Appeals' concern with the lack of a statute or rule expressly authorizing treatment of a post-dismissal motion as suspending the limitation period ignores our having grounded our decision in *Healy*, not on any express authorization (which was similarly lacking in *Healy*), but rather on "traditional and virtually unquestioned practice." 376 U.S., at 79, 84 S.Ct., at 556.] To have held otherwise might have prolonged litigation and unnecessarily burdened this Court, since plenary consideration of an issue by an appellate court ordinarily requires more time than is required for disposition by a trial court of a petition

for rehearing. *Id.*, at 80 [84 S.Ct., at 556]. The fact that appeals are now routed to the courts of appeals does not affect the wisdom of giving district courts the opportunity promptly to correct their own alleged errors, and we must likewise be wary of imposing added and unnecessary burdens on the courts of appeals. These considerations fully apply whether the issue presented on appeal is termed one of fact or of law, and the Court of Appeals' law/fact distinction—assuming such a distinction can be clearly drawn for these purposes— finds no support in *Healy*. It is true that the Government's postdismissal motion was not captioned a "petition for rehearing," but there can be no doubt that in purpose and effect it was precisely that, asking the District Court to "reconsider [a] question decided in the case" in order to effect an "alteration of the rights adjudicated." *Department of Banking v. Pink*, 317 U.S. 264, 266 [63 S.Ct. 233, 234, 87 L.Ed. 254] (1942).

Dieter, 429 U.S. at 8–9, 97 S.Ct. at 19–20.

Notwithstanding enactment of the Sentencing Guidelines, including 18 U.S.C. § 3582(c), and notwithstanding the modification of Rule 35, two courts of appeals have recently recognized an inherent power in the district court to correct acknowledged errors in sentencing.[4] In *United States v. Rico*, 902 F.2d 1065 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990), defendant and government reached a plea agreement which called for a specific sentence, and the court, intending to abide by the agreement, mistakenly imposed a less severe sentence. Three days later, the government brought the mistake to the court's attention and requested a correction. While emphasizing the narrowness of its decision, the Second Circuit held that the district court had inherent power to correct the "inadvertent" error within the time fixed for filing an appeal. *Id.* at 1068. *Compare United*

---

**4.** Fed.R.Crim.P. 36 grants the district court express authority at any time to correct clerical mistakes in judgments and orders. The mentioned cases involved something more than clerical errors, however, making it necessary to look beyond Rule 36. *United States v. Cook*, 890 F.2d at 674–75.

*States v. Uccio*, 917 F.2d 80, 84 (2d Cir. 1990).

In *Cook*, 890 F.2d 672, the district court had inadvertently omitted a term of imprisonment from a sentence of supervised release and community confinement under the Sentencing Guidelines, § 5C2.1(c)(3). Recognizing its error, the court *sua sponte* resentenced the defendant three weeks later in accordance with the Guidelines. The Fourth Circuit, while stressing that its holding was "a very narrow one," held that the district court had inherent power to modify the sentence "to correct an acknowledged and obvious mistake" during the thirty-day period in which an appeal could be filed. *Id.* at 675.[5]

■ Given the two above circuit rulings, and the Supreme Court's rationale in *Dieter*, we reject defendants' argument that an undecided rehearing motion no longer delays the running of the period for taking an appeal. To be sure, there is some logic to the proposition that the statutory and rule changes following adoption of the Guidelines have stripped the district court of power to correct its sentence once a sentence has been formally imposed—*ergo*, a rehearing motion is a futility and cannot suspend the running of the appeal period. However, the *Dieter* Court relied upon what it called the "traditional and virtually unquestioned practice" of treating rehearing petitions as suspending the limitation period, refusing to consider the "lack of a statute or rule." *Dieter*, 429 U.S. at 8,

note 3, 97 S.Ct. at 19, note 3. The *Dieter* Court also emphasized the practical desirability of unburdening appellate courts by allowing the district courts to correct their own alleged errors. *Dieter*, 429 U.S. at 8, 97 S.Ct. at 19. If the Court is to be taken literally—and when all nine members of the Supreme Court speak, we are certainly not disposed to do otherwise—we think the traditional tolling rule must continue to be observed. This position is strengthened by the fact that two of our sister circuits have found that the district courts retain certain residual corrective powers notwithstanding the recent changes made to Rule 35 and 18 U.S.C. § 3582(c).

The precise question is not the extent of the district court's corrective powers but simply whether the rule in *Dieter* was repealed *sub silentio* by the recent changes in Rule 35 and the language of 18 U.S.C. § 3582(c). That rule is merely that a timely motion for reconsideration tolls the running of the appeal period. Until the Supreme Court, Congress or the bodies collectively responsible for adopting the Federal Criminal Rules send a clearer signal that *Dieter* is not still the law, we believe it incumbent upon us to follow it. *Compare United States v. Lefler*, 880 F.2d 233 (9th Cir.1989) (tolling of appeal period unaffected even by court's conclusion that the district court lacked power to grant the relief requested in the motion for reconsideration). At least, we will follow the tolling rule in respect to motions for reconsidera-

---

5. Expressly to deal with problems of the sort raised in *Cook* and *Rico*, the Committee on Rules of Practice and Procedure of the Judicial Conference has proposed an amendment to Rule 35 that would allow the district court, "acting within 7 days after the imposition of sentence, [to] correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." Fed.R.Crim.P. 35(c) (proposed, July, 1990). The Committee note explains that the amendment would codify the *Cook* and *Rico* result, but would impose "a more stringent time requirement ... to reduce the likelihood of jurisdictional questions in the event of an appeal and to provide the parties with an opportunity to address the court's correction of the sentence, or lack thereof, in any appeal of the sentence." The Committee went on to emphasize that the proposal should not be interpreted to accord the district court anything

but the narrowest authority to correct sentences:

> The authority to correct a sentence under this subdivision is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a). The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

tion while pending within the time frame allowed for taking an appeal from the sentencing order. In so doing, we need take no position on the extent of the district court's retained corrective powers, if any. It is enough for present purposes that the government's reconsideration motion cannot, under today's case law, be said to have been unquestionably and blatantly outside the district court's jurisdiction to resolve. We hold, therefore, that this appeal is timely, and move to the merits of the appeal.

## II.

■■ The first step in reviewing a departure under the Guidelines is to determine whether the circumstances upon which the district court relied provide legitimate grounds justifying departure. *Diaz–Villafañe*, 874 F.2d at 49. This review is plenary. *Id.* We may resolve this case on this first step alone, as we agree with the government that the circumstances relied upon in this case—the defendants' family responsibilities to their four-year-old son and the sentence's fairness in comparison with other sentences imposed by the court—do not constitute legitimate grounds under the Guidelines for a downward departure.

The Sentencing Reform Act provides that a departure may be based upon "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). *See also Manual*, § 1A4(b) at 1.6–1.7 (a court may depart in an unusual case where conduct is outside the "heartland" of typical cases). We have previously emphasized that adherence to the legislative will in enacting sentencing reform with primary goals of honesty, proportionality and uniformity demands judicial restraint, *United States v. Williams*, 891 F.2d 962, 963–64 (1st Cir.1989), and that departures should only be permitted where there is something "special" about a given offender. *United States v. Norflett*, 922 F.2d 50, 54 (1st

Cir.1990); *United States v. Aguilar–Peña*, 887 F.2d 347, 350 (1st Cir.1989).

We do not think that responsibilities to their four-year-old son place defendants outside the "heartland" of typical cases. The Sentencing Commission has stated: "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines." *Guidelines*, § 5H1.6. In *United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990), we held that the sentencing judge erred in departing downward on grounds of the defendant's pregnancy. We stressed in *Pozzy* that: (1) "pregnancy of convicted female felons is neither atypical nor unusual;" (2) that the sentencing judge could have avoided the stigma to the child from being born in prison by postponing commitment until after the child was born; and (3) that "defendant's sister, the mother of two children, had volunteered to look after the child until defendant had completed her prison term." *Id.* at 138–39.

■ Likewise in this case, a convicted felon's responsibilities to a young child are neither atypical nor unusual. As the Sentencing Commission surely considered, innumerable defendants could establish that their prison sentences would interfere with parental responsibilities. *See United States v. Daly*, 883 F.2d 313, 319 (4th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990). Moreover, as the government suggests, the district court could have limited the impact on defendants' son within the Guidelines' regimen by staying the execution of sentence of one parent until the other's sentence had been served. Finally, as in *Pozzy*, the child would not be left unsupported, as defendants both indicated that Terry Carr's mother would care for the child while his parents were imprisoned. We do not go so far as to hold that parental responsibilities under extraordinary circumstances could never be a factor to be considered in departing downward from the Guidelines. *See Guidelines*, § 5H1.6, *supra*. But we find that no such extraordinary circum-

stances that would justify a departure have been demonstrated in this case.

 The district court also stated, in announcing the downward departures, that "it's fair compared to what I have done with other people." Defendants suggest that the court may have meant to compare the Carrs' sentences with those of their codefendants in this case, who received lesser sentences. The district court's individual beliefs as to proportionality and uniformity based on sentencing in other cases cannot alone constitute aggravating or mitigating circumstances not adequately taken into consideration by the Sentencing Commission. The Sentencing Commission had to have considered that the "heartland" sentencing range for codefendants might differ, based on a variety of factors. The district court's effort to reconcile sentences notwithstanding the Guidelines' requirements "indicates dissatisfaction with the guidelines rather than a reasoned judgment that particular characteristics of the offense ... have not been accounted for." *Aguilar–Peña*, 887 F.2d at 353 (*quoting United States v. Nuno–Para*, 877 F.2d 1409, 1414 (9th Cir.1989)). Where the Guidelines have taken matters into account in the case of each individual defendant, judicial dissatisfaction with the comparative outcome cannot justify a departure. We agree with the Second Circuit's statement in *United States v. Joyner*, 924 F.2d 454, 460–61 (2d Cir.1990):

> We think the entire structure of the sentencing guideline system indicates that the Commission fully considered the resulting disparities that would result among co-defendants and was satisfied that the different ranges it prescribed for differences in offense conduct and prior record would produce differences in punishments that the Commission believed were appropriate, rather than the "unwarranted" disparities that Congress sought to eliminate.
> The departure authority permits a sentencing judge to recognize that some factor concerning an individual defendant is of a kind or is present to a degree not adequately considered by the Com-

mission. But neither Congress nor the Commission could have expected that the mere fact of a difference between the applicable guideline range for a defendant and that of his co-defendant would permit a departure, either because the difference was too large or too small. . . . To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country.

*Vacated and remanded for further proceedings consistent with this opinion.*