UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 93-1089

 UNITED STATES OF AMERICA,

 Appellant,

 v.

 JOSEPH SCLAMO, JR.,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]
 

 

 Before

 Boudin, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 

 

 Brien T. O'Connor, Assistant United States Attorney, with whom A.
 
John Pappalardo, United States Attorney, was on brief for appellant.
 
 James R. Lemire for appellee.
 

 

 July 7, 1993
 

 COFFIN, Senior Circuit Judge. This is a governmental appeal
 

from a sentence in which the district court departed downward

from the Sentencing Guidelines. The court determined that

defendant's family situation revealed an aggravating circumstance

making this an "unusual case" not contemplated by the Guidelines.

Applying the modified standard of review for such cases recently

announced in United States v. Rivera, Nos. 92-1749, -2167, slip.
 

op. (1st Cir. June 4, 1993), we affirm.

 Defendant Joseph Sclamo, Jr. was arrested for attempting to

deliver nine and one-half ounces of cocaine to undercover

agents.1 He pled guilty to a single count of possession with

intent to distribute, in violation of 21 U.S.C. 841(a)(1).

Under the Guidelines, Sclamo's offense level was 17, and his

criminal history category was II. The district court, however,

treated Sclamo's criminal history category as I because it

considered the higher category to overrepresent the severity of

defendant's criminal history. The government recommended a 28-

month sentence, with 36 months of supervised release, and an

assessment of $50.

 Sclamo requested a downward departure based on his domestic

situation. For some three years, he had been living with a woman

and her two children and had developed a special and crucially

 

 1 Sclamo's arrest stemmed from his involvement in a DEA
operation targeting his father. The father was charged with two
counts of drug offenses, to which he pled guilty, and was
sentenced with defendant. The father received a sentence of 54
months of imprisonment, 36 months of supervised release, and an
assessment of $100.

 -2-

important relationship with the twelve-year-old son, James.

Sclamo urged that his presence at home was vital to James, who

was in need of his continuing companionship and guidance. Two

letters from James's psychologist were submitted with Sclamo's

motion. 

 According to the first letter, written in April, 1992, since

age 5, James continually had been abused physically by his

alcoholic biological father.2 James began to display aggressive

and disruptive behavior at home and in school and was placed in a

behavior disorder class. Eventually, he was diagnosed as

possessing "attention deficit hyperactivity disorder" and was

referred to the psychologist for individual psychotherapy on a

weekly outreach basis to help him develop "more effective coping

skills."

 James's mother divorced his father in 1989. In the same

year Sclamo began to live with James's family. The psychologist

saw Sclamo weekly, giving him and James's mother instruction in

parenting skills and behavior modification techniques. The

psychologist praised Sclamo as "very supportive, concerned, and

mature in his judgement and follow through." The psychologist

stated that James now views Sclamo as his stepfather, with whom

he has developed a "warm and trusting relationship . . .

resulting in a dramatic reduction in aggressive acting out," an

absence of school suspensions, and improved grades.

 

 2 James's father eventually was subjected to a restraining
order and then given a two-year suspended sentence for abuse. 

 -3-

 The psychologist concluded that Sclamo played a major

positive role in James's therapy and that his continued presence

was "necessary for James's increasing progress." The

psychologist warned that Sclamo's "removal from the family would

rob all members of a critical source of affection and positive

care and clinically could trigger a major regression in James's

stability and emotional development." 

 Six months later, a month before the sentencing hearing, the

psychologist reported in a second letter that James's progress

both at home and at school was continuing. James was now in a

"main stream class." The psychologist credited Sclamo's "ongoing

and persistent efforts . . . to set clear and firm limits with

James." Noting that Sclamo "has played a tremendous role in

James's progress and continues to be the only available resource

for positive male bonding," the psychologist recommended that

defendant be allowed to continue to live at home, where he could

serve as a "positive father surrogate for this 12 year old boy

who is most needy for continued positive guidance and

companionship to insure appropriate maturational development."

 Based on this information, the court concluded that a

downward departure was appropriate. It recognized "that

ordinarily family circumstances do not constitute a basis for

downward departure" but felt that precedents in which courts have

departed downward "are very much like this one in which there is

evidence of an exceptional kind of relationship and an

exceptional risk of harm to a child if that relationship is

 -4-

broken." Tr. at 22-23. The court further credited the two

reports from the psychologist as constituting 

 a very compelling set of evidence about a personal
 relationship that I don't think there's any reason to
 believe arose with any purpose of escaping criminal
 responsibility but has occurred independently of that,
 and it is, I think, a circumstance beyond in degree and
 nature those that were taken into account in the
 guidelines.

Id. at 22. It accordingly sentenced Sclamo to three years'
 

probation, with confinement at home for six months, subject to

permission from the Chief Probation Officer to leave home for

work, shopping, and medical attention.

 On appeal, the government contends that family relationships

are not a basis for departure. It notes that imprisonment

necessarily disrupts such relationships and that the sentencing

guidelines provide that "[f]amily ties and responsibilities . . .

are not ordinarily relevant" in determining whether departure is

appropriate. See USSG 5H1.6. The government further cites a
 

number of cases in which this court has refused to allow downward

departures based on family circumstances. See, e.g., United
 

States v. Carr, 932 F.2d 67, 72 (1st Cir. 1991).
 

 The government also alleges that, even if departure is

permitted based on family ties, Sclamo's situation is not

sufficiently compelling to warrant leniency. The government

points out that Sclamo is not James's biological father and that

their relationship has not been longstanding. Additionally, it

urges that defendant's involvement in distributing cocaine in the

 -5-

fall of 1989 justified the recommended sentence of 28 months'

incarceration.

 The resolution of this appeal is governed by our recent

pronouncements in United States v. Rivera. As Rivera makes
 

clear, the Guidelines say only that family circumstances do not

ordinarily warrant departure. See slip op. at 12 (citing
 

U.S.S.G. Ch. 5, Pt. H). Thus, while discouraging departures on

this ground, the Guidelines recognize that "special, unusual or

other-than-ordinary circumstances," id. at 16, may be considered
 

as a basis for departure. Indeed, our earlier cases do not hold

that district courts lack authority to depart on this ground but

merely illustrate circumstances not sufficiently extraordinary to

warrant departure. See, e.g., United States v. Rushby, 936 F.2d
 

41, 43 (1st Cir. 1991).

 We briefly recapitulate the approach Rivera suggests when a
 

departure from the Guidelines is requested. The district court

first should ask: "What features of this case, potentially, take

it outside the Guidelines' `heartland' and make of it a special,

or unusual, case?" Rivera, slip op. at 15. In cases like this,
 

where the special features are discouraged, the court should "go

on to decide whether the case is nonetheless not `ordinary,'

i.e., whether the case differs from the ordinary case in which
 

those features are present." Id. If the case is not ordinary,
 

the court then may consider departure, deriving whatever guidance

it can from the Guidelines, but, ultimately, "drawing upon

experience and informed judgment," id. at 17. If the court
 

 -6-

decides to depart, "it must explain how the case (compared to

other cases where the reason is present) is special. . . ." Id.
 

at 21 (emphasis omitted).

 As for our role in reviewing such departure decisions,

Rivera modified our prescriptions in United States v. Diaz-
 

Villafane, 874 F.2d 43 (1st Cir. 1989). In Diaz-Villafane, we
 

said that review of the district judge's determination that

circumstances were "of a kind or degree that they may

appropriately be relied upon to justify departure" was

"essentially plenary," id. at 49. Following Rivera, however, we
 

now "review the district court's determination of unusualness

with full awareness of, and respect for, the trier's superior

feel for the case, . . . not with the understanding that review

is plenary." Rivera, slip op. at 23-24 (quoting Diaz-Villafane,
 

874 F.2d at 50) (internal quotation marks omitted).

 With this background and without repeating the essential

facts in the two reports credited by the district court, we see a

number of special factors that transform Sclamo's situation into

an extraordinary one meriting the downward departure. See, e.g.,
 

United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992)
 

(affirming departure for defendant who "faced more than the

responsibilities of an ordinary parent, more even than those of

an ordinary single parent" as sole caregiver of 4 very young

children); United States v. Pena, 930 F.2d 1486, 1495 (10th Cir.
 

1991) (affirming departure to avoid placing infant children at

risk).

 -7-

 As an initial matter, we cannot fault the district court's

conclusion that the psychological treatment and observations of

James were not contrived or fabricated to assist Sclamo. James's

referral for individual psychotherapy, made by a case worker with

no connection to defendant, predated the circumstances giving

rise to this case. Moreover, the psychologist's reports are

based on a long history of personal observation, interaction, and

treatment not only of James but of defendant as well. The

district court, therefore, was entitled to credit the

psychologist's professional judgment of the critical and unique

role played by defendant in James's treatment. 

 Turning to the family ties at issue, we think that Sclamo's

situation is readily distinguished from ordinary cases, where one

can only speculate about the stresses that incarceration of a

family member might cause. In this case, there is evidence not

only that James already suffers from a clinical disorder, but

that his condition will deteriorate if defendant is incarcerated.

Sclamo has a track record of steady and effective support and

guidance of James over a lengthy period during which Sclamo was

both instructed and monitored by a psychologist. The

psychologist's prognosis that James would risk regression and

harm if defendant were incarcerated amply supports the district

court's determination that Sclamo's relationship to James is

sufficiently extraordinary to sustain a downward departure. 

 We therefore think that, under our present more restricted

standard of review, the decision made by the district court must

 -8-

be affirmed. We acknowledge that our own analysis of the

circumstances setting this case apart from the ordinary case is

more lengthy and detailed than that of the district court. In

future cases we would expect, in line with our general discussion

in Rivera, a very deliberate discussion of the factors making the
 

case unusual. But we see no purpose served in this case, decided

below without the benefit of our recent guidance, in remanding to

make explicit what was implicit.

 Affirmed. 
 

 -9-