UNITED STATES of America,
Appellee,

v.

**Joseph LOUIS, Defendant, Appellant.**

**No. 01–1836.**

United States Court of Appeals,
First Circuit.

Heard May 10, 2002.

Decided Aug. 20, 2002.

---

Leo T. Sorokin, Federal Defender Office, for appellant.

Charles W. Rankin, Rankin & Sultan, and John Reinstein, ACLU of Massachusetts, on brief as amicus curiae for appellant.

Karen M. Quesnel, with whom Eileen J. O'Connor, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Michael Karam, and Michael J. Sullivan were on brief, for appellee.

Before LIPEZ, Circuit Judge, CAMPBELL and BOWNES, Senior Circuit Judges.

LIPEZ, Circuit Judge.

During his sentencing hearing for assisting in the preparation of false tax returns, Defendant Joseph Louis argued that he should receive a downward departure from the sentence prescribed in the Sentencing Guidelines because of his family ties and responsibilities, including his relationship as a person of color with his biracial son. The district court denied his motion for a downward departure, stating that it could not consider the racial aspect of Louis's family circumstances because the Sentencing Guidelines prohibit departures on account of race. Louis appeals this legal determination, arguing that the district court could have considered the racial aspect of his relationship with his son. Finding that Louis would be ineligible for an "exceptional family circumstances" departure even if the district court had taken race into account, we affirm without addressing the legal correctness of the district court's refusal to consider the racial aspect of Louis's relationship with his son.

## I.

After a jury trial, Louis was convicted of 14 counts of assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). Before sentencing, he filed a motion for a downward departure based on

his "family ties and responsibilities." U.S.S.G. § 5H1.6. If approved, the departure would have permitted Louis to receive a sentence of probation with a special condition of home detention for twelve to fifteen months. Louis was instead sentenced to twenty-one months in prison.

The motion for a downward departure focused on Louis's relationship with his nine-year-old son, Ryan Joseph Louis (Ryan). Although Louis does not live with Ryan (he and Ryan's mother, Kelly Mahon, are divorced), he submitted evidence describing his close relationship with his son. Of particular importance was a report from a psychologist, Dr. John Daignault, describing Louis's relationship with Ryan and the potential impact of his incarceration on Ryan. Dr. Daignault observed that Louis "willingly cares for Ryan when Ryan's mother Kelly Mahon must work," and plays an "especially important role" in responding to Ryan's asthma. According to the report, Louis has "Ryan with him either every or every other weekend . . . telephones his son daily and takes him out for other activities during the week." Dr. Daignault noted that "Ryan himself articulates a deep attachment to his father." He opined that "[t]o rob Ryan of this integral parental relationship would run the risk of significant deterioration of the child's emotional and psychological functioning. . . . Ryan would be significantly adversely affected by the prolonged absence of his father from his day-to-day life."

Dr. Daignault's report also focused on Ryan's ethnicity. He is biracial, the child of a Caucasian mother and a Haitian father. According to Dr. Daignault:

It is also of considerable significance in our culture, in terms of Ryan's identity development, that Ryan's father is a person of color, as he is, whereas his mother is Caucasian. According to clinical research and my own experience, there is considerable importance to the availability of the parent of color to the offspring of color, in order for the child to have a needed role model in the developmental process, given the realities of our culture. In Ryan's case, this clinical impression takes on further relevance, as Ryan is reportedly the brunt of teasing by some peers at school.

Upon request by Louis's counsel, Dr. Daignault supported his assessment of the importance of a parent of color to a biracial child with a number of academic articles.[1]

Building on Dr. Daignault's report, Louis's counsel argued at the sentencing hearing that a downward departure was appropriate here because of the unusual circumstances of Louis's case. He focused on Louis's unique capacity to serve as a role model for Ryan as a parent of color, arguing that Louis's family circumstances are exceptional because biracial children "need to have the parent of color present and involved." Responding to that argument, the district court stated "[t]he only thing that makes this different from lots of

---

1. The articles included: The Morehouse Conference on African American Fathers, *Turning the Corner on Father Absence in Black America* (1999); Lundy Langston, *Force African–American Fathers to Parent Their Delinquent Sons—A Factor to be Considered at the Disposition Stage,* 4 Colum. J. Gender & L. 173 (1994); Marc A. Zimmerman et al., *Family Structure and Psychosocial Correlates Among Urban African–American Adolescent Males,* 66 Child Development 1598 (1995); Aurora P. Jackson, *The Effects of Nonresident Father Involvement on Single Black Mothers and Their Young Children,* Social Work, March 1999, at 156; and Rebekah Levine Conley, *Children's Socialization Experiences and Functioning in Single–Mother Households: The Importance of Fathers and Other Men,* 69 Child Development 219 (1998).

cases I have seen is the one point about this being a biracial child." The government pointed out that section 5H1.10 of the Sentencing Guidelines makes race irrelevant to the determination of a sentence. Accepting that argument, the district court denied the downward departure motion.

## II.

 Although a district court's decision rejecting a downward departure is largely unreviewable, we review de novo a district court's determination that it is without power to depart. *United States v. Carvell*, 74 F.3d 8, 11 (1st Cir.1996). Responding to the departure sought by Louis on the basis of "exceptional family circumstances," the court said that it could not grant the request because of its dependence on the race of the defendant:

> Well, I don't believe that I have authority to make this departure, because what [the government's attorney] says, it is taking race into account, and [the government's attorney] is right, that however you look at this, if it's because the child is biracial, it is because the defendant, being one of the two races involved, that his race plays a factor, plays a role. So I don't think I have the authority to make this departure.

The district court based this determination on the Sentencing Guidelines, which state that "race, sex, national origin, creed, religion, and socio-economic status ... are not relevant in the determination of a sentence." U.S.S.G. § 5H1.10 (implementing Congress's mandate in 28 U.S.C. § 994(d) that the guidelines be "entirely neutral" as to such factors).

Louis argues that this provision only proscribes departures based solely on a prohibited factor, and not a departure granted on another ground (i.e., family ties and responsibilities) in which the race of the defendant plays some part. *See Carvell*, 74 F.3d at 11 (1st Cir.1996) (permitting a departure on "lesser harm" grounds, even though the factual predicate for the departure "subsume[d] particular facts that would be precluded ... from forming a basis for departure").

We need not resolve that question here. Even if the district court had considered Louis's race and cultural background while deciding whether to depart on the basis of his family ties and responsibilities, it could not have granted the downward departure. Indeed, the court essentially made that very point:

> I remember that we are going uphill because we are talking about discouraged factor, and what we are talking about is one more hardship on this family that results from the biracial, because of the factor there is a biracial child involved.

> You know, occasionally I have a child with a serious illness, and father is important or mother is important because the child is ill. I don't know that is different in this case, but in any case, I think I am not authorized to make this departure, so I deny the motion for departure.

Put simply, the record before the court could not support a determination that Louis's family circumstances merited a departure. "Had the district departed on the basis of these facts, its decision could not have withstood legal challenge." *United States v. Rushby*, 936 F.2d 41, 42 (1st Cir.1991) (citing *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.1989)).

 The Sentencing Commission has stated that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable range guidelines." U.S.S.G. § 5H1.6. The

Sentencing Guidelines deem family circumstances a "discouraged" ground for departure, and a district court may depart on the basis of a discouraged ground only in an "exceptional" case. U.S.S.G. Ch. 5, Pt. H, intro. comment; *see also United States v. Pereira*, 272 F.3d 76, 80 (1st Cir.2001). A case is "exceptional" only when the discouraged ground is "of a kind, or [exists] to a degree, not adequately taken into consideration by the Sentencing Commission." U.S.S.G. § 5K2.0 (policy statement). Although departure is permitted in such situations, the district court must "explain how the case (compared to other cases where the reason is present) is special." *United States v. Rivera*, 994 F.2d 942, 951 (1st Cir.1993). The district court could not have done so in this case.

■ A defendant's incarceration will invariably cause hardship to his family. We cannot "presume, as a general matter, that the Commission either overlooked or inadequately considered" such a consequence in formulating the guidelines. *United States v. Clase–Espinal*, 115 F.3d 1054, 1057 (1st Cir.1997) (citing 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0). Only circumstances which "render [a] case atypical and take it out of the 'heartland' for which the applicable guideline was designed" are permissible grounds for a downward departure. *United States v. Carrion–Cruz*, 92 F.3d 5, 6 (1st Cir.1996). "Regrettably, the 'heartland' of cases under the Guidelines encompasses immense and heart-wrenching hardships." *United States v. Bogdan*, 284 F.3d 324, 330 (1st Cir.2002) (citing *United States v. Dyce*, 91 F.3d 1462, 1467–68 (D.C.Cir.1996) (holding that the district court erred when it departed based on the defendant's status as a single mother with three children under the age of four, one of whom was being breast-fed, and where incarceration would require placing the children in foster care)). Here, even if we assume arguendo that Louis's race and cultural background could form part of the factual predicate for a "family ties and responsibilities" departure, they would not take this case out of the heartland of cases where such departures are inappropriate. The issue is not the importance and value of the particular support that Louis gives to his son. That support is unquestionably important and valuable to Ryan. The question, rather, is whether that support is so different in kind or degree from the many kinds of support that can be important in the parent/child relationship that it makes the family ties and responsibilities factor in this case exceptional. We think not. Indeed, the hardship visited upon Louis's family by his incarceration does not match the hardship endured by other families in cases where we refused to authorize a departure.

For example, in *United States v. Carr*, 932 F.2d 67 (1st Cir.1991), we reversed a district court's decision to depart on family circumstances grounds, even though Carr had a four-year-old child and her husband was also facing imminent imprisonment. *Id.* at 72. We observed that the child "would not be left unsupported" because Carr's mother could care for her while Carr and her husband were imprisoned. *Id.* Similarly, Ryan's mother will continue to care for him during Louis's imprisonment.

■ In *United States v. Chestna*, 962 F.2d 103, 107 (1st Cir.1992), we concluded that the familial hardship caused by incarcerating the single mother of four young children (aged thirteen, eleven, four, and less than one) was not enough to justify a downward departure. We reasoned that "single mother status is not an 'idiosyncratic' circumstance, distinguishing her case from the 'mine-run.'" *Id.* at 107 (quoting *United States v. Aguilar–Pena*, 887 F.2d 347, 349–50 (1st Cir.1989) and

citing *Carr*, 932 F.2d at 72, and *United States v. Brand*, 907 F.2d 31, 33 (4th Cir. 1990) ("[a] sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children.")). Here, while undoubtedly a committed and loving father, Louis is not even the primary caretaker for his nine-year-old son. A departure on family circumstances grounds will rarely be appropriate when "there are feasible alternatives of care that are relatively comparable to what the defendant provides." *Pereira*, 272 F.3d at 83.

Louis contends that, besides him, there are no "feasible alternatives of care," *id.*, for Ryan, because he is the only parental black role model available to Ryan, and "parents of color ... provide a type of support, understanding, and role modeling [developed out of] experiences enduring ... racial prejudice that white parents normally do not experience." That argument is not without force, but it is not enough to remove this case from the "heartland" of cases under the Guidelines. Under *Carr* and *Chestna*, a downward departure would not be warranted even if Louis could demonstrate that he was the only parent available to meet *all* of Ryan's needs. His contribution is not more important than the broad range of support deemed an insufficient factual predicate for a "family circumstances" downward departure in *Carr* and *Chestna*.

Louis argues that his case is comparable to other situations in which we have permitted the district court to determine the appropriateness of a downward departure. For example, in *United States v. Sclamo*, 997 F.2d 970, 972–74 (1st Cir.1993), we ruled that the defendant's important role in caring for a stepson who suffered from a psychiatric illness constituted an "exceptional case," especially because the boy's condition would likely deteriorate in the

defendant's absence. *Id.* Louis has submitted expert testimony that his prolonged absence "would run the risk of significant deterioration of [Ryan]'s emotional and psychological functioning .... because Ryan would be significantly adversely affected by the prolonged absence of his father from his day-to-day life." However, Sclamo lived with his stepson, who was already suffering from a psychiatric illness. Louis does not have custody of Ryan during weekdays, and Ryan now exhibits no signs of illness. Although being separated from his father may have the adverse effect on Ryan's emotional well-being predicted by Dr. Daignault, Louis's incarceration does not threaten the sort of psychological damage foreseen in *Sclamo*, where the defendant's son was mentally ill well before Sclamo was sentenced.

Similarly, Louis's case may be distinguished from *Rivera*, 994 F.2d 942 (1st Cir.1993). There we determined that a downward departure may have been appropriate because a critical mass of hardships could accrue to the defendant's family. *Id.* at 948 ("It may not be unusual, for example, to find that a convicted drug offender is a single mother with family responsibilities, but, at some point, the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the 'ordinary' case of such circumstances into a case that is not at all ordinary."). However, the hardship of Rivera's family due to her incarceration appeared much more severe than that faced by Louis's family. Rivera stated to the district court that

1) she has three small children, ages three, five, and six, who need a mother's care;

2) she lives solely on welfare, receiving no financial aid from her former husband;

3) she has virtually no contact with any other family member (except for a sister, with five children, also on welfare) *Id.* at 952. Unlike *Rivera*, Louis has one child, who will be receiving care from a custodial parent. Louis has also failed to demonstrate that his family suffers from the same isolation and poverty that Rivera's three children faced.

■ All in all, Louis's case is closer to that of the defendants denied downward departures in *Carr* and *Chestna* than it is to *Sclamo* or *Rivera*. His situation is also closer to that of the defendant in *United States v. Shoupe*, 929 F.2d 116 (3d Cir. 1991). Although a district court granted Shoupe a downward departure in part because of his family responsibilities, the Third Circuit reversed:

> [T]he defendant's presentence report revealed that he has a young son who resides with the defendant's former wife, that the defendant has paid regular child support, and that the defendant frequently spoke with the child by telephone. Defense counsel added at the sentencing hearing that his client is a good father and regularly visits with his son. These facts do not show such extraordinary family ties and responsibilities as to justify a departure despite Section 5H1.6.

*Id.* at 121. As in Shoupe's case, the level of hardship that will be visited upon Louis's family as a result of the sentence imposed here does not exceed the level of hardship countenanced in many other cases where a downward departure was prohibited. *See* Jason Binimow, *Downward Departure From United States Sentencing Guidelines Based on Extraordinary Family Circumstances*, 145 A.L.R. Fed. 559, 1998 WL 282635, § 4 (1998) (of twenty-seven circuit court cases determining whether a downward departure could be justified because of the effect upon a child of the incarceration of a nurturing family member, twenty-four concluded that such a departure could not be justified). Moreover, it does not approach the hardships contemplated in those few cases where we have authorized a downward departure because of family responsibilities.

### III.

Even if the district court had considered the racial aspect of Louis's relationship with his biracial son, it could not have granted a downward departure here. The court recognized that underlying reality. That recognition was accurate. Louis's family ties and responsibilities do not remove his case from the "heartland" of cases covered by the Sentencing Guidelines.

**Affirmed.**