UNITED STATES of America, Appellee,

v.

Josh MORILLO, Defendant, Appellant.

No. 93–1388.

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1993.

Decided Nov. 8, 1993.

Ernest Barone, Providence, RI, for defendant, appellant.

Zechariah Chafee, Asst. U.S. Atty., with whom Edwin J. Gale, U.S. Atty., Providence, RI, was on brief, for the U.S.

Before BREYER, Chief Judge, SELYA and STAHL, Circuit Judges.

SELYA, Circuit Judge.

This proceeding requires us, for the first time, to chart the interrelationship between Fed.R.App.P. 4(b) (delimiting the appeal period in criminal cases) and Fed.R.Crim.P. 35(c) (the text of which is set forth in the margin).[1] We conclude that, under certain circumscribed circumstances, post-judgment motions brought under the latter rule can operate to extend the appeal period limned by the former rule, and that the instant case qualifies for this elongating effect. Thus, the appeal prosecuted by defendant-appellant Josh Morillo is properly before us. This initial success heralds a hollow victory, however, for we find Morillo's substantive arguments unpersuasive and affirm the judgment below.

## I.

### Background

A thumbnail sketch suffices to put this appeal into workable perspective.[2] In 1992, a federal grand jury indicted appellant on three counts of distributing heroin in violation of 21 U.S.C. § 841(a)(1) (1988). He entered a plea of not guilty. The district court set the case for trial in December. On November 30, appellant moved for the appointment of an independent toxicologist to weigh the drugs that the government planned to offer in evidence against him. He made it clear that he was ready to plead guilty to the charges but for the dispute over drug quantity. On December 10, 1992, without any agreement anent weight, appellant changed his plea and acknowledged his guilt on all counts. Some two months later the district court granted appellant's longstanding motion and ordered the drugs reweighed at a state-run laboratory. The laboratory reported its findings soon thereafter.

At a sentencing hearing held on March 18, 1993, the district court determined that the heroin involved in the counts of conviction warranted a base offense level (BOL) of 18. See U.S.S.G. § 2D1.1(c)(13) (Drug Quantity Table).[3] The judge increased the BOL by two levels because of Morillo's aggravating role in the offense, see U.S.S.G. § 3B1.1(c), and decreased the BOL by two levels for acceptance of responsibility, see id. § 3E1.1(a). When combined with appellant's criminal history category (III), the various adjustments produced a guideline sentencing range (GSR) of 33–41 months. The court sentenced appellant at the range's apex and entered final judgment on March 19, 1993.

On March 23, appellant filed a motion asking the court to correct his sentence because of an alleged miscalculation in figuring drug quantity. On April 1, appellant filed a notice of appeal. On April 19, the district court

1. The rule provides:

> The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error.

Fed.R.Crim.P. 35(c). This provision has been in effect only since December, 1991.

2. The November 1992 edition of the federal sentencing guidelines applies in this case. See United States v. Harotunian, 920 F.2d 1040, 1041–42 (1st Cir.1990). All references herein are to that version, unless otherwise specifically indicated.

3. In Part III(A), infra, we discuss the relevant details of the debate over drug weight and, relatedly, the appropriateness of the BOL.

addressed appellant's post-judgment motion and denied it by means of a margin order. Appellant did not file a further notice of appeal.

## II.

### Appellate Jurisdiction

#### A.

#### Suspensory Motions: An Overview

In a criminal case, a defendant must appeal within 10 days after entry of a judgment of conviction. *See* Fed.R.App.P. 4(b). Because the obligation is mandatory and jurisdictional, unexcused failures of compliance inevitably result in the loss of appeal rights. *See United States v. Kress*, 944 F.2d 155, 161 (3d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992); *United States v. Zuleta–Molina*, 840 F.2d 157, 158 (1st Cir.1988). However, in cases where the entry of a judgment is closely followed by the filing of a certain type of revisory motion, the time limit is relaxed. For example, most timely motions for new trial, Fed.R.Crim.P. 33, or timely motions in arrest of judgment, Fed.R.Crim.P. 34, stall the running of the appeal period and permit an appeal to be taken from the judgment of conviction, should it stand, "within 10 days after the entry of an order denying the [Rule 33 or Rule 34] motion." Fed.R.App.P. 4(b).

Post-judgment motions apart from those expressly enumerated in Fed.R.App.P. 4(b) can have the same suspensory effect. The paradigmatic example is a timely motion for rehearing or reconsideration. *See United States v. Ibarra*, — U.S. —, —, 112 S.Ct. 4, 6–7, 116 L.Ed.2d 1 (1991) (per curiam) (holding that government's timely motion for reconsideration restarted the appeal period with respect to the underlying judgment as of the date when the district court denied the motion); *United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 19, 50 L.Ed.2d 8 (1976) (per curiam) (noting that "the consistent practice in civil and criminal cases alike

has been to treat timely petitions for rehearing as rendering the original judgment nonfinal for purposes of appeal for as long as the petition is pending"); *United States v. Healy*, 376 U.S. 75, 78–80, 84 S.Ct. 553, 555–56, 11 L.Ed.2d 527 (1964); *United States v. Carr*, 932 F.2d 67, 71–72 (1st Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 112, 116 L.Ed.2d 82 (1991); *United States v. Gallardo*, 915 F.2d 149, 150 n. 2 (5th Cir.1990), *cert. denied*, 498 U.S. 1038, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991).

#### B.

#### Framing The Issue

The pivotal question here is whether appellant's post-judgment motion is of this suspensory genre.[4] If the filing of the motion did not interrupt the progress of the appeal period, then Fed.R.App.P. 4(b) applies without dilution and Morillo's notice of appeal, filed more than 10 days after entry of judgment, is a nullity. To avoid this result, appellant must convince us that bringing the March 23 motion suspended the running of the appeal period by rendering the original judgment nonfinal for appeal purposes, or, put in its simplest aspect, extended the time within which an appeal from the underlying judgment could be taken.

#### C.

#### Analysis

■ **1.** ***Characterization.*** Our first order of business is to determine the character of the March 23 motion. The motion did not invoke, or even refer to, any particular procedural rule. When a motion is silent as to the location of its procedural moorings, an inquiring court must look to the motion's substance, including the relief requested, in order properly to characterize it. *See, e.g., Dieter*, 429 U.S. at 8–9, 97 S.Ct. at 19; *Hannon v. Maschner*, 981 F.2d 1142, 1144 n. 2 (10th Cir.1992); *Feinstein v. Moses*, 951 F.2d 16, 19 n. 3 (1st Cir.1991); *United States v.*

---

**4.** We use the term "suspensory" because, although some courts and litigants describe the effect of such motions as "tolling" the time for appeal, that description is inaccurate. Because the appeal period begins to run afresh at the time

of disposition of the motion, the motion does not toll the appeal period, but restarts it. *See Ibarra*, — U.S. at — n. 2, 112 S.Ct. at 5 n. 2; *see also* Fed.R.App. 4(b) (discussing effect of timely motions filed under Fed.R.Crim.P. 33, 34).

*Lefler,* 880 F.2d 233, 234 n. 2 (9th Cir.1989); *see also Perez–Perez v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 283 (1st Cir.1993) (stating that a court should examine the function of an uncaptioned post-judgment motion in order to gauge its effect on the appeal period).

■ Here, appellant styled his motion as a motion "to correct sentence." Elevating substance over form, we conclude that the motion invokes, or is at least the functional equivalent of a motion brought pursuant to, Fed.R.Crim.P. 35(c), quoted *supra* note 1. The motion posits, in fairly blunt terms, that the district court made a numerical mistake in its aggregation of discerned drug quantities. Whether or not one classifies this claimed bevue as "arithmetical," the motion alleges, at a bare minimum, a strain of "clear error." This is the very sort of situation that Rule 35(c) was designed to address. *See* Fed.R.Crim.P. 35(c) advisory committee's note (1991 amendment) (stating that the rule enables a court to rectify "an obvious error or mistake" affecting the sentence so long as the error or mistake is "discovered shortly after the sentence is imposed"); *see also United States v. Corey,* 999 F.2d 493, 496 (10th Cir.1993) (explaining that Rule 35(c) codifies the district court's "inherent authority ... to correct sentencing errors"). And, moreover, no one has suggested a better fit elsewhere.

■ *2. Effect.* Having identified the motion as a motion under Fed.R.Crim.P. 35(c), the lens of inquiry narrows. We focus next on whether a motion brought pursuant to Rule 35(c) extends the time for appealing from the underlying judgment.[5] We conclude that it does.

It is settled beyond peradventure that a timely motion for rehearing or reconsideration of a judgment in a criminal case interrupts the original appeal period. *See supra* p. 867 (listing precedents). This tenet applies in criminal cases notwithstanding that, by and large, there are "no explicit provisions for rehearing proceedings in criminal cases." 16 Charles A. Wright et al., *Federal Practice & Procedure* § 3950, at 482 (Supp. 1993). Justice Harlan, writing for a unanimous Court, explained the rationale for giving such motions suspensory effect:

> [Depriving parties to a criminal case] of the opportunity to petition a lower court for the correction of errors might, in some circumstances, actually prolong the process of litigation—since plenary consideration of a question of law [on appeal] ordinarily consumes more time than disposition of a petition for rehearing—and could, in some cases, impose an added and unnecessary burden of adjudication upon [the appellate court].

*Healy,* 376 U.S. at 80, 84 S.Ct. at 556. The *Healy* doctrine is still good law, having survived the massive changes wrought by the Sentencing Reform Act of 1984. *See Carr,* 932 F.2d at 71–72; *accord Corey,* 999 F.2d at 495–96; *United States v. Greenwood,* 974 F.2d 1449, 1470–71 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2354, 124 L.Ed.2d 262 (1993).

■ It stands to reason that, if a sentence is infected by clear error, a timely motion seeking to correct it—at least a motion which, like this one, seeks to shrink the incarcerative portion of the sentence and, thus, carries the potential to affect substantive rights—fits the *Healy* mold. Forcing a party to press ahead with an appeal while such a motion is pending would countervail the principles of efficacy and judicial economy that undergird *Healy.* Consequently, we hold that when, as now, a party to a criminal case files a timely motion under Fed. R.Crim.P. 35(c), asking the sentencing court to reconsider an issue in the case in a way that will, if successful, bring about an alteration of the defendant's substantive rights, then the filing of that motion renders the

---

5. To be sure, the text of Rule 35(c) does not mention motions and contemplates that the district court, within certain specified constraints, may act *sua sponte* to correct sentencing errors. But we do not read the rule as prohibiting either the government or the defendant from calling the need for corrective action to the sentencing court's attention by means of a timely filed post-judgment motion. We believe that such motions are permissible and note that other courts have read the rule as authorizing them. *See, e.g., Corey,* 999 F.2d at 494–96; *United States v. Turner,* 998 F.2d 534, 536 (7th Cir.1993).

judgment nonfinal for purposes of appeal.[6] *Accord Corey,* 999 F.2d at 496.

■ 3. ***Timeliness.*** Our speleology into this jurisdictional cave also uncovers a temporal dimension. We have been careful to note, and believe it is prudent to emphasize, that only a *timely* motion for rehearing or reconsideration should be accorded suspensory effect. *See, e.g., Dieter,* 429 U.S. at 8, 97 S.Ct. at 19 (limiting suspensory effect to "timely petitions for rehearing"); *Healy,* 376 U.S. at 77, 80, 84 S.Ct. at 554, 556 (same). Timeliness is measured differently in different contexts. In *Carr,* we were confronted with a motion for rehearing addressed to a district court's inherent power to correct an erroneous sentence.[7] We accorded suspensory effect, holding the motion to be timely because it was brought "within the time frame allowed for taking an appeal from the sentencing order." *Carr,* 932 F.2d at 72. Hence, the motion interrupted the running of the appeal period. *Id.; accord Lefler,* 880 F.2d at 235 (explaining that, "for a criminal defendant's motion for reconsideration to extend the time within which a notice of appeal must be filed, it must be filed within the [original 10–day appeal period]").

In precincts patrolled by Rule 35(c), however, the *Carr* formulation is overgenerous. The drafters of the rule were concerned lest they pave further avenues of delay within the criminal justice system. To assuage this concern, the rule states that a court may act thereunder "within 7 days after the imposition of sentence." .Fed.R.Crim.P. 35(c). The interval constitutes a limitation, *see* Fed. R.Crim.P. 35(c) advisory committee's note (1991 amendment) (discussing the new rule's "stringent time requirement")—and the limi-

tation is absolute: if no motion is made within the seven-day period, .none can be made thereafter; and, moreover, if a motion is timely made but is not decided within the seven-day period, the judge's power to act under the rule subsides and the pending motion is deemed to be denied as of that date. Judge Easterbrook neatly captured the essence of the limitation: "The district court's inaction ha[s] the same effect as denying the motion, making the judgment final on the date the district judge's power to alter the sentence expired." *United States v. Turner,* 998 F.2d 534, 536 (7th Cir.1993).

■ We derive two valuable lessons from the anatomy of the rule: (1) a motion under Rule 35(c) interrupts the appeal period and renders a judgment nonfinal only if it is brought within seven days following the imposition of sentence; and (2) the appeal period is restarted when the district court decides a timeous Rule 35(c) motion or at the expiration of seven days next following imposition of sentence, whichever first occurs.

■ 4. ***Application.*** In this case, the district court pronounced sentence on March 18 and entered judgment the next day.[8] Appellant filed his Rule 35(c) motion on March 23, comfortably within the seven-day period. The district court did not act immediately upon the motion and, consequently, the pendency of the motion rendered the judgment nonfinal only through the end of the seven-day period, when the appeal period restarted. From that point forward, appellant had 10 days within which to docket his appeal. *See* Fed.R.App.P. 4(b). By filing a notice of appeal on April 1, 1993, he met the deadline

---

6. The likelihood that appellant might prevail on his motion is irrelevant for purposes of determining the motion's suspensory effect. *See Ibarra,* — U.S. at —, 112 S.Ct. at 6. It is the character of the post-judgment motion, not its intrinsic merit or lack thereof, that determines whether, if seasonably filed, it will interrupt the running of the appeal period.

7. The events in *Carr* antedated the adoption of Rule 35(c). *See Carr,* 932 F.2d at 71 n. 5.

8. For ease in reference we use March 19 as the dispositive date. Withal, we note that Rule 35(c) purports to measure the seven-day period from

"the imposition of sentence." We think it is likely that when the two dates differ, this phrase signifies the date judgment enters, rather than the date sentence is orally pronounced. *See Zuleta–Molina,* 840 F.2d at 158 n. 1 (reiterating that "[t]he prescribed period for filing a notice of appeal begins at the time of entry of the judgment or order on the criminal docket"); *United States v. Cooper,* 876 F.2d 1192, 1195 (5th Cir. 1989) (stating that an appeal's timeliness is measured from the date judgment is entered on the docket, not from the date of order). At any rate, the one-day differential has no material effect in this case.

with room to spare. Hence, the appeal is properly before us.[9]

## III.

### The Merits

#### A.

##### Drug Quantity

Under the guidelines, drug quantity is "a key datum" in the sentencing of narcotics offenders. *United States v. Bradley*, 917 F.2d 601, 604 (1st Cir.1990). Because drug quantity profoundly affects sentence length, relatively small quantitative differences often have a significant leveraging effect. The phenomenon grows more pronounced as amounts edge closer to the lines that have been drawn within the drug quantity table. This case aptly illustrates the point. The district court found that the heroin involved in the offenses of conviction weighed just over 20 grams. The defense contends that the heroin weighed 19.75 grams. This seemingly slight difference translates into an increment of two offense levels. *See* U.S.S.G. § 2D1.1(c)(13), (14) (Drug Quantity Table) (setting BOL of 18 for offenses involving at least 20 but less than 40 grams of heroin and setting BOL of 16 for offenses involving at least 10 but less than 20 grams of heroin). A two-level spread easily can produce a difference of over a year in a standard sentence.[10]

The facts relating to the dispute over drug quantity can be succinctly summarized. Defendant was charged with distributing heroin on three occasions: February 7, 20, and 21, 1992. Each transaction culminated in the exchange of a substantial number of "browns," individually packaged for street-level sales. Immediately following each transaction, the federal Drug Enforcement Administration (DEA) estimated the weight of the purveyed drugs by representative sampling, that is, by weighing a few of the "browns" and multiplying the average weight by the total number of packs contained in the consignment. On this basis, the DEA reported that the first transaction involved 6.51 grams of heroin, the second transaction involved 1.24 grams, and the final transaction involved 20.30 grams. Appellant contested only the last of these three assessments. Pursuant to the district court's order, the state toxicology laboratory studied the heroin involved in the third transaction, using its own formula, and estimated that it weighed between 10.39 and 16.21 grams. Of necessity, however, this estimate did not include the weight of the heroin previously extracted from the third batch by the DEA, used in arriving at the DEA's drug quantity determination, and never replaced.

Faced with these competing estimates, the judge found it probable that the third batch contained at least 12 grams. This total, when augmented by the weight of the drugs from the first two transactions (6.51 and 1.24 grams, respectively) and the sample amount originally extracted from the third transaction (0.41 grams), brought the drug quantity over 20 grams and the BOL to 18.[11]

9. There are other questions that might affect the jurisdictional calculus in cases of this stripe—but those questions are not presented on this record. For instance, we have no occasion to consider (i) whether a different result might obtain if it could be shown that a movant brought a post-judgment motion in bad faith, *see Ibarra*, —— U.S. at —— n. 3, 112 S.Ct. at 7 n. 3; or (ii) whether a Rule 35(c) motion that seeks to correct an error but not to alter substantive rights possesses suspensory effect, *cf. FCC v. League of Women Voters*, 468 U.S. 364, 373, 104 S.Ct. 3106, 3113, 82 L.Ed.2d 278 (1984) (emphasizing that suspension of the appeal period while a motion for reconsideration is pending results only when the motion "actually seeks an alteration of the rights adjudicated in the ... judgment") (citation and internal quotation marks omitted); *FTC v. Minneapolis–Honeywell Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–49, 97 L.Ed. 245 (1952) (similar); or (iii) whether the seven-day period mentioned in Rule 35(c) should be counted under Fed.R.Crim.P. 45(a) or Fed.R.App.P. 26(a)—a choice that will affect how weekends and holidays factor into the count.

10. For example, in Morillo's criminal history category (III), the spread between the high end of a Level 18 GSR (41 months) and the low end of a Level 16 GSR (27 months) is 14 months.

11. Appellant's post-judgment motion claimed clear error on the theory that the judge intended to aggregate only the first three of the quantities mentioned in the text. In rejecting the Rule 35(c) motion, however, Judge Lagueux made it clear that he also intended to include the sample amount from the final transaction.

■ The government has the burden of proving drug quantity by a fair preponderance of the evidence. *See United States v. Sklar*, 920 F.2d 107, 110 (1st Cir.1990). Absent a mistake of law, we will set aside a sentencing court's determination of drug quantity only if it is clearly erroneous. *See United States v. Argencourt*, 996 F.2d 1300, 1307 (1st Cir.1993); *United States v. McCarthy*, 961 F.2d 972, 978 (1st Cir.1992); *Bradley*, 917 F.2d at 605. In other words, as a precondition to relief on appeal, an appellant must convince us that the district court made "a serious mistake" in figuring drug quantity. *Sklar*, 920 F.2d at 111.

■ We discern no error here. When it is impossible or impractical to obtain an exact drug quantity for sentencing purposes, a reasoned estimate will suffice. *See Sklar*, 920 F.2d at 113; *United States v. Hilton*, 894 F.2d 485, 488 (1st Cir.1990); *United States v. Gerante*, 891 F.2d 364, 369 (1st Cir.1989). The court below achieved this benchmark, taking a conservative approach to the disputed third transaction. Given the divergent laboratory estimates ranging from a low of 10.39 grams to a high of 20.3 grams, the court's decision that a figure toward the low end of the continuum represented the most probable weight cannot be faulted. *Cf., e.g., United States v. 22.80 Acres of Land*, 839 F.2d 1362, 1365 (9th Cir.1988) (stressing district court's flexibility in determining value of property where testimony of six expert witnesses indicated wide range of values). Where, as here, the evidence fully supports more than one inference, a sentencing court's choice from among plausible alternatives cannot be clearly erroneous. *See Bradley*, 917 F.2d at 606; *United States v. Ruiz*, 905 F.2d 499, 508 (1st Cir.1990).

## B.

### Acceptance of Responsibility

The district court found that appellant had accepted responsibility for his criminality and trimmed his offense level by two levels on that account, *see* U.S.S.G. § 3E1.1(a), but refused to grant an additional one-level credit under U.S.S.G. § 3E1.1(b).[12] Appellant assigns error to this refusal, eyeing a further reduction pursuant to section 3E1.1(b)(2).

■ A defendant bears the burden of proving entitlement to decreases in the offense level, including downward adjustments for acceptance of responsibility. *See, e.g., United States v. Ocasio–Rivera*, 991 F.2d 1, 4 (1st Cir.1993). Once the sentencing court has ruled against him on such an issue, the defendant faces an uphill battle. We have held, in the context of what is now section 3E1.1(a), that "[w]hether a defendant 'clearly demonstrates a recognition and affirmative acceptance of personal responsibility' is a fact-dominated issue, and the district court's decision to withhold a reduction in the offense level will not be overturned unless clearly erroneous." *United States v. Royer*, 895 F.2d 28, 29 (1st Cir.1990) (citation omitted). The clearly erroneous standard also guides appellate review of district court determinations under section 3E1.1(b). *See United States v. Donovan*, 996 F.2d 1343, 1346 (1st Cir.1993); *see also* U.S.S.G. § 3E1.1 comment. (n. 5).

■ We find no clear error in the district court's determination that appellant failed to qualify for the added discount under section 3E1.1(b)(2). Appellant was arraigned on October 20, 1992. He pleaded not guilty. Several weeks later, in his November 30 motion for the appointment of an independent toxicologist, appellant indicated that he was "prepared to plead guilty to the three

---

12. The applicable guideline reads:
    (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
    (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

    (1) timely providing complete information to the government concerning his own involvement in the offense; or
    (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.
    U.S.S.G. § 3E1.1.

charges ... but for the dispute as to the weight" of the drugs. In our view, notification of an intention to enter a guilty plea, subject to a major condition, is far too problematic to meet the standard of section 3E1.1(b)(2). That provision was designed to allow the government and the district court to conserve resources by avoiding unnecessary trial preparation. *See, e.g., United States v. Lombardi,* 5 F.3d 568, 572 (1st Cir.1993). A conditional offer to plead does not serve this end; until the contingency is removed, the prosecution must still prepare for trial and the court must still reserve calendar time. Thus, the district judge did not err in refusing to treat the November 30 offer as a "notification" within the purview of section 3E1.1(b)(2).

There is little more that need be said. Appellant did not plead unconditionally until December 10, 1992—the very date that the court had set for jury selection. A defendant who withholds a guilty plea until he stands poised on the brink of trial has no entitlement to the soothing unguent of section 3E1.1(b)(2). Therefore, the court below acted appropriately in awarding appellant a two-level, rather than a three-level, decrease for acceptance of responsibility.

## C.

### Role in the Offense

Finally, appellant claims that the district court erred in its determination of his role in the criminal activity. *See* U.S.S.G. § 3B1.1(c) (providing a two-level increase for assuming managerial responsibilities in certain criminal endeavors). Boosting a defendant's BOL by two levels under this provision is justified if the sentencing court determines that the offense(s) of conviction involved at least two participants,[13] and that the defendant exercised control over one of them. *See United States v. Akitoye,* 923 F.2d 221, 227 (1st Cir.1991); *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990). The government must bear the burden of proving that an upward role-in-the-offense adjustment is warranted.

In this case, it is undisputed that at least three people participated in the felonious enterprise: appellant, his supplier (Faustino Moronta, Jr.), and a courier, Oscar Severino. On at least one occasion, appellant paged Severino via beeper, and Severino responded to appellant's apartment with the merchandise—heroin apparently originating with Moronta. The presentence investigation report (PSI Report) asserted that Severino worked for and under the direction of Morillo. Appellant filed written objections to several aspects of the PSI Report, but he did not object to this determination. At the sentencing hearing, appellant's attorney argued briefly that his client was only a middleman in the criminal transaction; while conceding that Severino brought the drugs to the desired locus at appellant's behest, counsel claimed that Severino did so as Moronta's agent—and that Morillo exercised no independent control over him. Yet, appellant offered no evidence to contradict the assertion contained in the PSI Report. Not surprisingly, then, the district court accepted the probation officer's version of the chain of command.

Facts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes. *See United States v. Zuleta–Alvarez,* 922 F.2d 33, 35–36 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991); *Ruiz,* 905 F.2d at 508; *United States v. Rivera Ramos,* 856 F.2d 420, 424 (1st Cir.1988), *cert. denied,* 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989); *see also United States v. Tardiff,* 969 F.2d 1283, 1287 (1st Cir.1992) (ruling that district courts possess "broad discretion to determine what data is, or is not, sufficiently dependable to be used in imposing sentence"); *United States v. Iguaran–Palmar,* 926 F.2d 7, 10 (1st Cir.1991) (similar). We lack adequate reason to make an exception to that rule for appellant's sake. A defendant who accepts the probation department's configuration of the sentencing

---

**13.** The defendant himself may be counted in determining the overall number of participants. *See United States v. Preakos,* 907 F.2d 7, 10 (1st Cir.1990) (per curiam). But he must exercise control over at least one other participant to warrant an upward adjustment.

record without contesting the facts set forth in the PSI Report can scarcely be heard to complain when the sentencing court uses those facts in making its findings. *See, e.g., United States v. Montoya,* 967 F.2d 1, 3 (1st Cir.) (ruling that, where the defendant offered no information to suggest an inaccuracy in the PSI Report's drug quantity computation, the sentencing court could rely on the computation), *cert. denied,* —— U.S. ——, 113 S.Ct. 507, 121 L.Ed.2d 442 (1992); *United States v. Garcia,* 954 F.2d 12, 19 (1st Cir. 1992) (holding that the sentencing court lawfully relied on the PSI Report when appellant couched his objections exclusively as interpretations of facts rather than as challenges to the underlying facts themselves); *United States v. Mir,* 919 F.2d 940, 943 (5th Cir.1990) (explaining that the district court is free to adopt facts contained in the PSI Report without further inquiry where defendant objects to the PSI Report but offers no rebuttal evidence); *Ruiz,* 905 F.2d at 508 (holding that a sentencing court may rely on determinations contained in the PSI Report where defendant adduces no countervailing evidence).

■ We need go no further. Mindful that appellate review of role-in-the-offense determinations is conducted under a deferential "clear error" standard, *see United States v. Savoie,* 985 F.2d 612, 615 (1st Cir.1993); *Akitoye,* 923 F.2d at 227, we cannot fault the district court, in the absence of contrary evidence, for adopting the organizational structure suggested in the PSI Report and finding that Morillo, who was able to page Severino and have him deliver drugs on demand, exercised "some degree of control or organizational authority" over Severino. *Fuller,* 897 F.2d at 1220.

*Affirmed.*