**UNITED STATES of America, Appellee,**

v.

**Stephen PODOLSKY, Defendant, Appellant.**

No. 98–1284.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1998.

Decided Oct. 8, 1998.

Michael J. Traft, with whom Janice Bassil and Carney & Bassil were on brief, for appellant.

Jennifer Zacks, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for the United States.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

Horace Greeley, who commonly is thought to have originated the hortatory phrase "Go west, young man, go west," recognized that travel can provide a gateway to fame and fortune.[1] Here, however, inordinately extensive travel proved too much of a good thing for Dr. Stephen Podolsky. In the end, Podolsky's appeal turns not on his peripatetic exploits, but on the barest procedural question. Resolving that question, we conclude that Podolsky, for the most part, did not challenge the district court's rulings in a timely fashion. On the lone issue that is properly before us, his appeal lacks merit.

## I. BACKGROUND

Podolsky ran afoul of the law after he planned, orchestrated, and executed an elaborate airline ticket ruse. The scheme operated substantially as follows. Podolsky would purchase a "conjunction" ticket in his own name or that of a family member. Such tickets route the traveler through four or more legs from the start of a journey to the final destination. Airlines package these tickets in at least two separate booklets, each with a cover page listing the itinerary and fare for the entire trip. Podolsky would split the ticket packages to make each of them appear to be a complete conjunction ticket. He then would take each faux ticket (actually a partial ticket) to an airline facility (often using different ticket offices of different airlines in different cities) and secure a refund for the full value of the original ticket. As a variation, Podolsky sometimes would exchange the faux ticket for a new (authentic) conjunction ticket and would use the new ticket to restart the process. Although the parties' estimates of the losses that the airlines suffered differ substantially, Podolsky concedes that he completed hundreds of thousands of dollars in airline transactions in this fashion during the late 1980s and early 1990s.

The scheme came to light in the spring of 1993 and the authorities thereafter recovered several hundred unused airline tickets that

---

1. Despite the prevalent perception, Greeley appears to have borrowed the phrase from a fellow journalist and appropriated the concomitant credit. *See* Glyndon G. Van Deusen, *Horace Greeley: Nineteenth–Century Crusader* 173 & n. 44 (1953) (describing the origins and attribution of the phrase).

were in Podolsky's possession.[2] Following a lengthy investigation, a federal grand jury charged Podolsky with numerous counts of mail and wire fraud. *See* 18 U.S.C. §§ 1341, 1343 (1994). Podolsky pled guilty to eleven counts. At a disposition hearing held on February 20, 1997, the district court departed downward in response to evidence that Podolsky suffered from an obsessive-compulsive disorder. *See* USSG § 5K2.13 (1997). The court imposed a 36–month term of probation and ordered Podolsky to pay a special assessment of $550 and $77,623 in restitution (the latter amount to be distributed among four airlines).

The restitution figure represented the net difference between credits and debits reflected on twelve credit card accounts in Podolsky's name ($109,678), less the aggregate finance charges reflected on those same account statements ($32,055). Podolsky apparently had other credit card accounts, but no records could be obtained for them. Thus, the district judge left open a window of opportunity at sentencing, stating that the restitution order could be remitted if (and to the extent that) Podolsky submitted to the probation department additional factual evidence suggesting the propriety of such an adjustment. The judgment embodying the sentence was entered on the court docket on March 20, 1997. Podolsky did not appeal.

On August 26, 1997, Podolsky filed a motion for return of property (Motion No. 1). Invoking Fed.R.Crim.P. 41(e), this motion sought recoupment of the unused airline tickets that he earlier had provided to TWA and the FBI.[3] *See supra* note 2. The government interposed an objection and the court summarily denied the motion on September 23, 1997.

Apparently not realizing that Motion No. 1 already had been decided, Podolsky filed a response to the government's objection on October 17, 1997. He simultaneously filed a motion for review of restitution (Motion No. 2). Upon learning the fate of Motion No. 1, Podolsky's attorney wrote a letter dated November 3, 1997, requesting that the October 17 rejoinder be treated as a motion for reconsideration. The court did not grant the request, nor was it obligated to do so. *See Massachusetts Sch. of Law v. American Bar Ass'n*, 142 F.3d 26, 45 n. 16 (1st Cir.1998) (explaining that a letter that "does not appear in the docket ... cannot be construed as a motion" for purposes of testing a party's compliance with the court's pretrial scheduling order); *cf. Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 528 (1st Cir.1991) (rejecting an appellant's assignment of error when the appellant sought relief below only by means of an undocketed letter). The court did address Motion No. 2, however, denying it in a footnote order entered on February 12, 1998. Podolsky filed his notice of appeal on February 23, 1998.

## II. THE JURISDICTIONAL ISSUE

The threshold issue in this appeal concerns the existence *vel non* of appellate jurisdiction. Because Podolsky's statement of his claims is somewhat muddled, we consider several possibilities.

 **1.** To the extent that Podolsky seeks to appeal the judgment itself (including the order of restitution), his effort fails because he did not notice his appeal until almost a year after the district court entered the judgment. A sentence imposing an order of restitution is a final judgment, regardless of whether the restitution later may be corrected, amended, or adjusted. *See* 18 U.S.C. § 3664(*o*) (Supp.1996). A defendant in a federal criminal case must appeal within ten days after the entry of the final judgment or order, *see* Fed. R.App. P. 4(b), and Podolsky

---

**2.** Trans World Airlines (TWA) personnel confronted Podolsky on April 30, 1993, and their subsequent consensual search of his luggage produced approximately 100 airline tickets. Podolsky later delivered several hundred more tickets to the Federal Bureau of Investigation (FBI). These unused tickets, collectively, were worth well in excess of $300,000.

**3.** On the same date, Podolsky also moved for a hearing regarding this issue. The district court denied that motion without prejudice to the filing of a renewed motion, accompanied by a more detailed explanation of the need for a hearing. Podolsky never revived the motion and, on appeal, he makes no developed argumentation concerning it. Hence, we abjure any further reference to that motion.

did not do so. Inasmuch as the obligation to notice an appeal within the time prescribed by law is mandatory and jurisdictional, such a failure of compliance typically results in a complete loss of appeal rights. *See United States v. Morillo*, 8 F.3d 864, 867 (1st Cir. 1993). So it is here.

**2.** Nor do the provisions of Fed. R.App. P. 4(b) redound to Podolsky's benefit. This rule provides in substance that the timely filing of certain post-judgment motions in a criminal case tolls the running of the appeal period, subject to a fresh start after the resolution of the last such motion. However, the motions that Podolsky filed are not among those specifically identified in the rule,[4] and, thus, are not of the type or kind that normally suffice to suspend the running of the appeal period.

To be sure, some "[p]ost-judgment motions apart from those expressly enumerated in Fed. R.App. P. 4(b) can have the same suspensory effect." *Morillo*, 8 F.3d at 867. Yet, even assuming *arguendo* that one of Podolsky's post-judgment motions was of a suspensory character under the *Morillo* exception—and we see no basis in the record for any such assumption—the end result would be unaffected. Suspensory motions only extend the appeal period if timely filed, *see id.* at 869, and timeliness, in this context, requires at a minimum filing within the appeal period. Podolsky's earliest motion was not filed until almost five months after the entry of judgment against him. To allow so belated a motion to have suspensory effect would unreasonably expand the narrow *Morillo* exception, thus threatening to engulf the rule and undermine the finality of judgments.

**3.** To the extent that Podolsky's appeal may be understood as an appeal from the district court's denial of Motion No. 1, it is similarly unavailing. Motion No. 1 sought the return, under Fed.R.Crim.P. 41(e),[5] of the airline tickets seized from Podolsky by TWA and the FBI. The parties dispute whether Motion No. 1 is merely a garden-variety motion in a criminal case, or, instead, a separate civil complaint. This distinction is potentially important, because the rules governing criminal and civil appeals differ materially. Even so, it is unnecessary for us to resolve the question; Podolsky's attempted appeal of the denial of Motion No. 1 is not timely under either standard. We explain briefly.

If Motion No. 1 is deemed a criminal motion, we lack jurisdiction over this appeal. The district court denied Motion No. 1 on September 23, 1997, and Podolsky did not notice his appeal until February 23, 1998. Thus, Podolsky failed many times over to satisfy the applicable ten-day requirement. *See* Fed. R.App. P. 4(b).

If, on the other hand, Motion No. 1 was not a motion at all, but, as Podolsky now asseverates, was the functional equivalent of a newly instituted civil action,[6] then its denial would be subject to the so-called "separate document" rule, requiring that a judgment in a civil case be recorded on a separate document. *See* Fed.R.Civ.P. 58 ("Every judgment shall be set forth on a separate document."); *see also Fiore v. Washington County Community Mental Health Ctr.*, 960 F.2d 229, 233–36 (1st Cir. 1992) (en banc) (explicating and applying the separate document rule). Nevertheless,

---

4. In terms, Rule 4(b) encompasses motions: "(1) for judgment of acquittal; (2) for arrest of judgment; (3) for a new trial on any ground other than newly discovered evidence; or (4) for a new trial based on the ground of newly discovered evidence if the motion is made before or within 10 days after entry of the judgment."

5. The rule provides in pertinent part:
A person aggrieved ... by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property.

6. There is an arguable basis for this asseveration, as there is authority for the proposition that, after criminal proceedings against a defendant have been concluded, a district court should treat a defendant's ensuing Rule 41(e) motion as a civil complaint. *See United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir.1995); *United States v. Martinson*, 809 F.2d 1364, 1366–67 (9th Cir. 1987). It is, of course, an open question whether, in view of the somewhat indeterminate nature of the restitution order, the proceedings against Podolsky were completed at the time he filed Motion No. 1.

a district court's failure to memorialize its disposition of a motion on a separate document does not expose its order to appeal in perpetuity. Rather, as we explained in *Fiore,*

> it [is] appropriate, absent exceptional circumstances, to infer waiver where a party fails to act within three months of the court's last order in the case.... A party wishing to pursue an appeal and awaiting the separate document of judgment from the trial court can, and should, within that period file a motion for entry of judgment.

*Id.* at 236. In this instance, the district court denied Motion No. 1 on September 23, 1997, some five months before Podolsky docketed the notice of appeal. No explicit motion for entry of judgment was filed at any time, and no exceptional circumstances exist. Under *Fiore,* then, the order denying the motion became final and unappealable prior to the end of 1997 (and well before Podolsky acted).

■ Podolsky essays an end run around *Fiore.* He tells us that his lawyer sent a letter on November 3, 1997, requesting that the court treat his response to the government's objection to Motion No. 1 as a motion for reconsideration. As this case proves, parties who resort to informal measures often do so at their peril. The letter is not docketed in the district court record. Moreover, even if such a letter were sent and received, it was too little and too late.

■ The letter was too little because it did not mention entry of judgment and cannot reasonably be construed a motion for that relief. Additionally, an undocketed letter is not a pleading and need not be treated by the court as one. *See Massachusetts Sch. of Law,* 142 F.3d at 45 n. 16; *Weinberger,* 925 F.2d at 528. The letter was too late because, if it can be considered a motion at all, it was a motion for reconsideration, not for entry of judgment. As such, it was out of time. *See* Fed.R.Civ.P. 59(e) (stating that motions to alter or amend a judgment must be filed within ten days); *see also In re Sun Pipe Line Co.,* 831 F.2d 22, 24 (1st Cir.1987) (explaining that any "motion which ask[s] the court to modify its earlier disposition of a case because of an allegedly erroneous legal result" must be deemed to be brought under

Rule 59(e)). Thus, the letter was incapable either of elongating the appeal period or of preventing a waiver of the separate document rule.

This brings us full circle. Under any imaginable scenario, Podolsky's appeal from the denial of Motion No. 1 was untimely. Hence, this aspect of his appeal fails for want of appellate jurisdiction.

## III. THE REMAINING ISSUE

■ In contrast to the jurisdictional tangle surrounding Motion No. 1, Motion No. 2 clearly falls within our domain. The lower court denied this motion on February 12, 1998, and Podolsky noticed an appeal on February 23, 1998. The appeal was timely. *See* Fed. R.App. P. 26(a) (explicating procedures for computing the ten-day appeal period). Consequently, we must reach Podolsky's substantive claims on this issue.

■ We apply an abuse of discretion standard in reviewing the district court's disposition of Motion No. 2. *See United States v. Vaknin,* 112 F.3d 579, 586 (1st Cir.1997). Because the court acted by simple endorsement, we cannot be certain of the grounds upon which Judge Stearns rejected the motion. In that state of affairs, we have two options; an appellate court, faced with the task of reviewing an inscrutable order, may either remand for a fuller exposition or act, without remanding, if a reasonable basis supporting the order is made manifest on the record. See *Camilo–Robles v. Hoyos,* 151 F.3d 1, 8–9, n. 5 (1st Cir.1998) (observing that an appellate court, facing an unexplained trial court order, may either remand for clarification or employ the record to "reconstruct the probable basis for the district court's decision"); *see also Polyplastics, Inc. v. Transconex, Inc.,* 827 F.2d 859, 860–61 (1st Cir.1987) (discussing appellate court's freedom to affirm on any independently sufficient ground revealed by the record). In this instance, we choose the latter option.

Here, the district court placed a special condition on its restitution order. The condition stated that:

> The court will entertain remitting restitution or any portion thereof if the defendant

presents evidence that he has paid the costs of the airline tickets through his credit card payments. The defendant is to provide the Probation Officer with any documentation of his payment. The Probation Officer in turn is to furnish this information to the Government, who shall have an opportunity to respond. The Court will ultimately decide on any amendment to the order of restitution; . . . .

Purportedly responding to this condition, Podolsky reassessed the data used in establishing the original restitutionary award and presented this reworking to his probation officer on July 21, 1997 (roughly five months after the date of sentencing and four months after entry of the sentence on the docket). Three months later, he filed Motion No. 2, beseeching the court to hold a hearing regarding the new assessment or to assign review of the information to a master of some kind. The district court denied this motion by endorsement.

Podolsky did not appeal the district court's original restitutionary order, so that order became final and unappealable. Withal, in crafting the special condition of probation, the district court left open a pathway for remission of restitution: if the defendant "present[ed] evidence that he has paid the costs of the airline tickets through his credit card payments."

In this venue, Podolsky argues that the district judge's statements at the disposition hearing reveal a willingness to revalue existing information even without the benefit of additional evidence. The best support for Podolsky's argument, hawked by his counsel at oral argument in this court, is Judge Stearns's statement that, by imposing the condition, he left open the possibility of "remit[ting] the probation term at least in all or in part if you can show me by a preponderance of the evidence a reason to do so." But this comment is at best ambiguous. Moreover, during the relevant colloquy, Judge Stearns noted that he was "satisfied with the integrity of the government's accounting which focuses on the elicit [sic] credits the defendant amassed for the exchange of tickets." He then framed the window of opportunity for remission and directed Podolsky to

provide his probation officer with "financial information . . . to establish restitution or to advise [the judge] of whether any revision in the restitution is in order." Given these remarks, we find Podolsky's interpretation of the colloquy dubious.

We need not dwell upon this amphipodily because Judge Stearns's written statement of the probation condition removed any uncertainty as to what sort of submission might engender a decrease in the restitution owed. That statement limited the evidence that would ground a reduction to evidence that Podolsky "paid the costs of the airline tickets through his credit payments." We accept Judge Stearns's written order at face value and regard it as satisfactory clarification of his intent in establishing the probation condition. *See Lefkowitz v. Fair*, 816 F.2d 17, 22 (1st Cir.1987) (suggesting that "uncertainty as to the meaning and intendment of a district court order can sometimes best be dispelled by deference to the views of the writing judge"). This course seems especially appropriate since the judge's subsequent summary rejection of Podolsky's proffer is fully consistent with this construction.

That ends the matter. All the information that Podolsky subsequently submitted to the probation department and on which Motion No. 2 depends was available at the time of sentencing. Podolsky's recharacterization of credit card charges and his rearrangement of figures previously disclosed amounts to nothing more than an attempt to reargue the original issue in defiance of conventional finality principles. This initiative cannot qualify under any reasonable definition as additional "evidence" or "documentation." Because Motion No. 2 strayed from the narrow path that the sentencing court had left open, the court acted well within its discretion in declining to reconsider its restitution order in response to Podolsky's importuning.

## IV. CONCLUSION

We need go no further. Podolsky failed to preserve his right to appeal either his sentence (including the order for restitution) or the district court's denial of his subsequent motion for return of property. And though he did retain a right to appeal from the

sentencing court's purported refusal to implement the special condition attached to his probation, Podolsky's presentation did not address the circumscribed issue left open by the court. Thus, because Motion No. 2 represented a futile attempt to insert a square peg into a round hole, the district court did not abuse its considerable discretion in rebuffing the attempt.

*Affirmed.*