USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1284

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 STEPHEN PODOLSKY,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Richard G. Stearns, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 

 Michael J. Traft, with whom Janice Bassil and Carney & Bassilwere on brief, for appellant.
 Jennifer Zacks, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief, for the
United States.

October 8, 1998

 SELYA, Circuit Judge. Horace Greeley, who commonly is
thought to have originated the hortatory phrase "Go west, young
man, go west," recognized that travel can provide a gateway to fame
and fortune. Here, however, inordinately extensive travel proved
too much of a good thing for Dr. Stephen Podolsky. In the end,
Podolsky's appeal turns not on his peripatetic exploits, but on the
barest procedural question. Resolving that question, we conclude
that Podolsky, for the most part, did not challenge the district
court's rulings in a timely fashion. On the lone issue that is
properly before us, his appeal lacks merit.
I. BACKGROUND
 Podolsky ran afoul of the law after he planned,
orchestrated, and executed an elaborate airline ticket ruse. The
scheme operated substantially as follows. Podolsky would purchase
a "conjunction" ticket in his own name or that of a family member. 
Such tickets route the traveler through four or more legs from the
start of a journey to the final destination. Airlines package
these tickets in at least two separate booklets, each with a cover
page listing the itinerary and fare for the entire trip. Podolsky
would split the ticket packages to make each of them appear to be
a complete conjunction ticket. He then would take each faux ticket
(actually a partial ticket) to an airline facility (often using
different ticket offices of different airlines in different cities)
and secure a refund for the full value of the original ticket. As
a variation, Podolsky sometimes would exchange the faux ticket for
a new (authentic) conjunction ticket and would use the new ticket
to restart the process. Although the parties' estimates of the
losses that the airlines suffered differ substantially, Podolsky
concedes that he completed hundreds of thousands of dollars in
airline transactions in this fashion during the late 1980s and
early 1990s.
 The scheme came to light in the spring of 1993 and the
authorities thereafter recovered several hundred unused airline
tickets that were in Podolsky's possession. Following a lengthy
investigation, a federal grand jury charged Podolsky with numerous
counts of mail and wire fraud. See 18 U.S.C. 1341, 1343 (1994). 
Podolsky pled guilty to eleven counts. At a disposition hearing
held on February 20, 1997, the district court departed downward in
response to evidence that Podolsky suffered from an obsessive-
compulsive disorder. See USSG 5K2.13 (1997). The court imposed
a 36-month term of probation and ordered Podolsky to pay a special
assessment of $550 and $77,623 in restitution (the latter amount to
be distributed among four airlines).
 The restitution figure represented the net difference
between credits and debits reflected on twelve credit card accounts
in Podolsky's name ($109,678), less the aggregate finance charges
reflected on those same account statements ($32,055). Podolsky
apparently had other credit card accounts, but no records could be
obtained for them. Thus, the district judge left open a window of
opportunity at sentencing, stating that the restitution order could
be remitted if (and to the extent that) Podolsky submitted to the
probation department additional factual evidence suggesting the
propriety of such an adjustment. The judgment embodying the
sentence was entered on the court docket on March 20, 1997. 
Podolsky did not appeal.
 On August 26, 1997, Podolsky filed a motion for return of
property (Motion No. 1). Invoking Fed. R. Crim. P. 41(e), this
motion sought recoupment of the unused airline tickets that he
earlier had provided to TWA and the FBI. See supra note 2. The
government interposed an objection and the court summarily denied
the motion on September 23, 1997.
 Apparently not realizing that Motion No. 1 already had
been decided, Podolsky filed a response to the government's
objection on October 17, 1997. He simultaneously filed a motion
for review of restitution (Motion No. 2). Upon learning the fate
of Motion No. 1, Podolsky's attorney wrote a letter dated November
3, 1997, requesting that the October 17 rejoinder be treated as a
motion for reconsideration. The court did not grant the request,
nor was it obligated to do so. See Massachusetts Sch. of Law v.
American Bar Ass'n, 142 F.3d 26, 45 n.16 (1st Cir. 1998)
(explaining that a letter that "does not appear in the docket . .
. cannot be construed as a motion" for purposes of testing a
party's compliance with the court's pretrial scheduling order); cf.Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 528 (1st Cir.
1991) (rejecting an appellant's assignment of error when the
appellant sought relief below only by means of an undocketed
letter). The court did address Motion No. 2, however, denying it
in a footnote order dated February 11, 1998. Podolsky filed his
notice of appeal on February 23, 1998.
II. THE JURISDICTIONAL ISSUE
 The threshold issue in this appeal concerns the existence
vel non of appellate jurisdiction. Because Podolsky's statement of
his claims is somewhat muddled, we consider several possibilities.
 1. To the extent that Podolsky seeks to appeal the
judgment itself (including the order of restitution), his effort
fails because he did not notice his appeal until almost a year
after the district court entered the judgment. A sentence imposing
an order of restitution is a final judgment, regardless of whether
the restitution later may be corrected, amended, or adjusted. See18 U.S.C. 3664(o) (Supp. 1996). A defendant in a federal
criminal case must appeal within ten days after the entry of the
final judgment or order, see Fed. R. App. P. 4(b), and Podolsky did
not do so. Inasmuch as the obligation to notice an appeal within
the time prescribed by law is mandatory and jurisdictional, such a
failure of compliance typically results in a complete loss of
appeal rights. See United States v. Morillo, 8 F.3d 864, 867 (1st
Cir. 1993). So it is here.
 2. Nor do the provisions of Fed. R. App. P. 4(b) redound
to Podolsky's benefit. This rule provides in substance that the
timely filing of certain post-judgment motions in a criminal case
tolls the running of the appeal period, subject to a fresh start
after the resolution of the last such motion. However, the motions
that Podolsky filed are not among those specifically identified in
the rule, and, thus, are not of the type or kind that normally
suffice to suspend the running of the appeal period.
 To be sure, some "[p]ost-judgment motions apart from
those expressly enumerated in Fed. R. App. P. 4(b) can have the
same suspensory effect." Morillo, 8 F.3d at 867. Yet, even
assuming arguendo that one of Podolsky's post-judgment motions was
of a suspensory character under the Morillo exception and we see
no basis in the record for any such assumption the end result
would be unaffected. Suspensory motions only extend the appeal
period if timely filed, see id. at 869, and timeliness, in this
context, requires at a minimum filing within the appeal period. 
Podolsky's earliest motion was not filed until almost five months
after the entry of judgment against him. To allow so belated a
motion to have suspensory effect would unreasonably expand the
narrow Morillo exception, thus threatening to engulf the rule and
undermine the finality of judgments.
 3. To the extent that Podolsky's appeal may be
understood as an appeal from the district court's denial of Motion
No. 1, it is similarly unavailing. Motion No. 1 sought the return,
under Fed. R. Crim. P. 41(e), of the airline tickets seized from
Podolsky by TWA and the FBI. The parties dispute whether Motion
No. 1 is merely a garden-variety motion in a criminal case, or,
instead, a separate civil complaint. This distinction is
potentially important, because the rules governing criminal and
civil appeals differ materially. Even so, it is unnecessary for us
to resolve the question; Podolsky's attempted appeal of the denial
of Motion No. 1 is not timely under either standard. We explain
briefly.
 If Motion No. 1 is deemed a criminal motion, we lack
jurisdiction over this appeal. The district court denied Motion
No. 1 on September 23, 1997, and Podolsky did not notice his appeal
until February 23, 1998. Thus, Podolsky failed many times over to
satisfy the applicable ten-day requirement. See Fed. R. App. P.
4(b).
 If, on the other hand, Motion No. 1 was not a motion at
all, but, as Podolsky now asseverates, was the functional
equivalent of a newly instituted civil action, then its denial
would be subject to the so-called "separate document" rule,
requiring that a judgment in a civil case be recorded on a separate
document. See Fed. R. Civ. P. 58 ("Every judgment shall be set
forth on a separate document."); see also Fiore v. Washington
County Community Mental Health Ctr., 960 F.2d 229, 233-36 (1st Cir.
1992) (en banc) (explicating and applying the separate document
rule). Nevertheless, a district court's failure to memorialize its
disposition of a motion on a separate document does not expose its
order to appeal in perpetuity. Rather, as we explained in Fiore,
 it [is] appropriate, absent exceptional
 circumstances, to infer waiver where a party
 fails to act within three months of the
 court's last order in the case. . . . A party
 wishing to pursue an appeal and awaiting the
 separate document of judgment from the trial
 court can, and should, within that period file
 a motion for entry of judgment.

Id. at 236. In this instance, the district court denied Motion No.
1 on September 23, 1997, some five months before Podolsky docketed
the notice of appeal. No explicit motion for entry of judgment was
filed at any time, and no exceptional circumstances exist. Under
Fiore, then, the order denying the motion became final and
unappealable prior to the end of 1997 (and well before Podolsky
acted).
 Podolsky essays an end run around Fiore. He tells us
that his lawyer sent a letter on November 3, 1997, requesting that
the court treat his response to the government's objection to
Motion No. 1 as a motion for reconsideration. As this case
proves, parties who resort to informal measures often do so at
their peril. The letter is not docketed in the district court
record. Moreover, even if such a letter were sent and received, it
was too little and too late.
 The letter was too little because it did not mention
entry of judgment and cannot reasonably be construed a motion for
that relief. Additionally, an undocketed letter is not a pleading
and need not be treated by the court as one. See Massachusetts
Sch. of Law, 142 F.3d at 45 n.16; Weinberger, 925 F.2d at 528. The
letter was too late because, if it can be considered a motion at
all, it was a motion for reconsideration, not for entry of
judgment. As such, it was out of time. See Fed. R. Civ. P. 59(e)
(stating that motions to alter or amend a judgment must be filed
within ten days); see also In re Sun Pipe Line Co., 831 F.2d 22, 24
(1st Cir. 1987) (explaining that any "motion which ask[s] the court
to modify its earlier disposition of a case because of an allegedly
erroneous legal result" must be deemed to be brought under Rule
59(e)). Thus, the letter was incapable either of elongating the
appeal period or of preventing a waiver of the separate document
rule.
 This brings us full circle. Under any imaginable
scenario, Podolsky's appeal from the denial of Motion No. 1 was
untimely. Hence, this aspect of his appeal fails for want of
appellate jurisdiction.
III. THE REMAINING ISSUE
 In contrast to the jurisdictional tangle surrounding
Motion No. 1, Motion No. 2 clearly falls within our domain. The
lower court denied this motion on February 12, 1998, and Podolsky
noticed an appeal on February 23, 1998. The appeal was timely. 
See Fed. R. App. P. 26(a) (explicating procedures for computing the
ten-day appeal period). Consequently, we must reach Podolsky's
substantive claims on this issue.
 We apply an abuse of discretion standard in reviewing the
district court's disposition of Motion No. 2. See United States v.
Vaknin, 112 F.3d 579, 586 (1st Cir. 1997). Because the court acted
by simple endorsement, we cannot be certain of the grounds upon
which Judge Stearns rejected the motion. In that state of affairs,
we have two options; an appellate court, faced with the task of
reviewing an inscrutable order, may either remand for a fuller
exposition or act, without remanding, if a reasonable basis
supporting the order is made manifest on the record. See Camilo-
Robles v. Hoyos, ___ F.3d ___, ___ & n.5 (1st Cir. 1998) [No. 97-
2260, slip op. at 15-16 & n.5] (observing that an appellate court,
facing an unexplained trial court order, may either remand for
clarification or employ the record to "reconstruct the probable
basis for the district court's decision"); see also Polyplastics,
Inc. v. Transconex, Inc., 827 F.2d 859, 860-61 (1st Cir. 1987)
(discussing appellate court's freedom to affirm on any
independently sufficient ground revealed by the record). In this
instance, we choose the latter option.
 Here, the district court placed a special condition on
its restitution order. The condition stated that:
 The court will entertain remitting restitution
 or any portion thereof if the defendant
 presents evidence that he has paid the costs
 of the airline tickets through his credit card
 payments. The defendant is to provide the
 Probation Officer with any documentation of
 his payment. The Probation Officer in turn is
 to furnish this information to the Government,
 who shall have an opportunity to respond. The
 Court will ultimately decide on any amendment
 to the order of restitution; . . . .

Purportedly responding to this condition, Podolsky reassessed the
data used in establishing the original restitutionary award and
presented this reworking to his probation officer on July 21, 1997
(roughly five months after the date of sentencing and four months
after entry of the sentence on the docket). Three months later, he
filed Motion No. 2, beseeching the court to hold a hearing
regarding the new assessment or to assign review of the information
to a master of some kind. The district court denied this motion by
endorsement.
 Podolsky did not appeal the district court's original
restitutionary order, so that order became final and unappealable. 
Withal, in crafting the special condition of probation, the
district court left open a pathway for remission of restitution: 
if the defendant "present[ed] evidence that he has paid the costs
of the airline tickets through his credit card payments."
 In this venue, Podolsky argues that the district judge's
statements at the disposition hearing reveal a willingness to
revalue existing information even without the benefit of additional
evidence. The best support for Podolsky's argument, hawked by his
counsel at oral argument in this court, is Judge Stearns's
statement that, by imposing the condition, he left open the
possibility of "remit[ting] the probation term at least in all or
in part if you can show me by a preponderance of the evidence a
reason to do so." But this comment is at best ambiguous. 
Moreover, during the relevant colloquy, Judge Stearns noted that he
was "satisfied with the integrity of the government's accounting
which focuses on the elicit [sic] credits the defendant amassed for
the exchange of tickets." He then framed the window of opportunity
for remission and directed Podolsky to provide his probation
officer with "financial information . . . to establish restitution
or to advise [the judge] of whether any revision in the restitution
is in order." Given these remarks, we find Podolsky's
interpretation of the colloquy dubious.
 We need not dwell upon this amphiboly because Judge
Stearns's written statement of the probation condition removed any
uncertainty as to what sort of submission might engender a decrease
in the restitution owed. That statement limited the evidence that
would ground a reduction to evidence that Podolsky "paid the costs
of the airline tickets through his credit payments." We accept
Judge Stearns's written order at face value and regard it as
satisfactory clarification of his intent in establishing the
probation condition. See Lefkowitz v. Fair, 816 F.2d 17, 22 (1st
Cir. 1987) (suggesting that "uncertainty as to the meaning and
intendment of a district court order can sometimes best be
dispelled by deference to the views of the writing judge"). This
course seems especially appropriate since the judge's subsequent
summary rejection of Podolsky's proffer is fully consistent with
this construction.
 That ends the matter. All the information that Podolsky
subsequently submitted to the probation department and on which
Motion No. 2 depends was available at the time of sentencing. 
Podolsky's recharacterization of credit card charges and his
rearrangement of figures previously disclosed amounts to nothing
more than an attempt to reargue the original issue in defiance of
conventional finality principles. This initiative cannot qualify
under any reasonable definition as additional "evidence" or
"documentation." Because Motion No. 2 strayed from the narrow path
that the sentencing court had left open, the court acted well
within its discretion in declining to reconsider its restitution
order in response to Podolsky's importuning.
IV. CONCLUSION
 We need go no further. Podolsky failed to preserve his
right to appeal either his sentence (including the order for
restitution) or the district court's denial of his subsequent
motion for return of property. And though he did retain a right to
appeal from the sentencing court's purported refusal to implement
the special condition attached to his probation, Podolsky's
presentation did not address the circumscribed issue left open by
the court. Thus, because Motion No. 2 represented a futile attempt
to insert a square peg into a round hole, the district court did
not abuse its considerable discretion in rebuffing the attempt.

Affirmed.