# United States Court of Appeals
## For the First Circuit

No. 17-1319

UNITED STATES OF AMERICA,

Appellee,

v.

ELVING MADERA-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Howard, Chief Judge,
Boudin and Kayatta, Circuit Judges.

Rafael F. Castro Lang on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney,
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and Julia M. Meconiates, Assistant United
States Attorney, on brief for appellee.

August 2, 2018

**BOUDIN, <u>Circuit Judge</u>**.  Elving Madera-Rivera ("Madera") was the architect of a cocaine trafficking conspiracy, using the mails and commercial airlines to send kilogram quantities of the drug via Puerto Rico into the continental United States.  Madera recruited and paid the couriers, using contacts in the continental United States to make arrangements for distribution of the cocaine after it arrived.

Madera was indicted with fourteen co-defendants on June 26, 2013, and charged with one count of conspiracy to possess five kilograms or more of cocaine with intent to distribute.  21 U.S.C. §§ 841, 846.  He then sought bail and, when it was denied, filed an emergency motion, describing an enlarged spleen, low platelet levels, and Hepatitis C; the latter caused him to suffer from chronic liver ailments, including liver cirrhosis.[1]  The government ultimately agreed to support Madera's bail motion, at least for a period.

As the case progressed, Madera rejected, for reasons that are disputed, the government's proffered plea agreement and instead entered a straight guilty plea.  Madera says that the government required as a condition of the plea bargain that he waive any right to seek continued bail for medical treatment

---

[1]  Madera's principal and reply briefs--not filed under seal--cite to and directly quote materials from his sealed appendix, including medical records, effectively inviting resort by anyone else.

pending sentencing. The government denies this happened, arguing instead that Madera's decision to enter a straight plea was a strategic one to allow him to contest other issues.

After Madera pled guilty, the court held sentencing hearings to determine the amount of cocaine to attribute to Madera, U.S.S.G. § 2D1.1(c) (U.S. Sentencing Comm'n 2014), his precise role in the conspiracy, id. § 3B1.1, and the offense level decrease for his acceptance of responsibility, id. § 3E1.1. The court held Madera responsible for seventy-seven kilograms of cocaine, id. § 2D1.1(c)(3), and found that he was a leader of the conspiracy, id. § 3B1.1(a). The court granted a three-level decrease for acceptance of responsibility. Id. § 3E1.1(a)-(b).

Madera then sought a downward departure under U.S.S.G. § 5H1.4 (and also requested a variance--an issue we address below). Section 5H1.4 states:

> Physical condition . . . may be relevant in determining whether a departure is warranted, if the condition . . . individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward . . . .

Madera argued that his life was in danger and would assuredly be shortened by a guidelines sentence, since prison facilities would be unable to fully address his medical needs. See United States v. Herman, 848 F.3d 55, 59 (1st Cir. 2017).

- 3 -

The government pressed for a within-guidelines sentence and said that "nothing presented" indicated that the Bureau of Prisons ("BOP") was incapable of providing appropriate medical treatment.

The court's final tally was a total offense level of thirty-five, entailing a guidelines range of 168 to 210 months. U.S.S.G. ch. 5, pt. A. The court ultimately imposed a 180-month sentence.

During the last hearing, the court said that it understood--from whom or what is not clear--that Madera's health condition, "serious as it is, can be adequately treated and handled during his incarceration." The court urged that Madera be sent to the Butner Federal Correction Institution in North Carolina--a prison known for its medical facilities and requested by defense counsel.

Madera now seeks a remand and a sentence at the mandatory minimum of ten years. 21 U.S.C. § 841(b)(1)(A). He relies on his doctor, Barbara Rosado Carrion, who reported that Madera "has a reduced survival and shorten[ed] life expectancy ([five] years or less) in the absence of liver transplantation." Madera also challenges the court's refusal to impose a variant sentence below the guidelines range.

The standard for review of a denial of a downward departure depends, as with most claims of error on appeal, on the nature of the issue pressed by the appellant--which may be a

straight issue of law, an issue of fact, or one (for example) that contests the judge's disposition on a matter of discretion, usually on the ground that discretion was abused. Madera's claim here is first that the guideline regarding extraordinary physical impairment, U.S.S.G. § 5H1.4, would have permitted the judge to depart downward in his case; second that the medical evidence indicated that he needed a liver transplant within five years or else would die; and third that it was an abuse of discretion to deny the reduction of his sentence to the mandatory minimum of ten years.

The first proposition is at least plausible; the second might have been debated, yet the government declined to do so at this time; but our rejection of the appeal rests on the flawed reasoning that underlies Madera's "abuse of discretion" argument. A ten-year sentence does nothing to respond to the supposed peril Madera faces, namely, death within five years without a transplant. Madera's doctor prescribed routine testing on a permanent basis and Madera has not sufficiently demonstrated that the major federal prison medical facilities would be incapable of providing such treatment.[2] Only Madera's need for a transplant exceeds the

---

[2]  Dr. Carrion wrote in part:

> Mr. Madera needs to be followed closely by a liver specialist every [three] to [four] months with blood work[up] that includes [a] liver profile, coagulation profile and CBC. Medical assessment should include evaluation

mundane.  And Madera's requested reduced sentence of ten years would do nothing to address the threat of death within five.

Further, if Madera's condition worsens and the government denies or unduly delays a transplant, the remedy would be injunctive relief under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Kosilek v. Spencer, 774 F.3d 63, 82-84 (1st Cir. 2014) (en banc).  In sum, a sentence at the mandatory minimum would not mitigate the risk Madera faces and the remedy would likely be a constitutional claim that the defendant has not made.

Madera also argues that the court erred at sentencing when it failed to make a "specific finding" as to whether he suffered from an "extraordinary physical impairment," U.S.S.G. § 5H1.4.  This circuit has not required such a finding and anyway the government did not question Madera's condition or challenge his doctor's grave medical assessment.  Cf. Fed. R. Crim. P. 32(i)(3)(B) (a sentencing court must rule on any "controverted matter" at sentencing or determine that a ruling is unnecessary).  What was disputed was whether Madera's patently dire condition

---

for the presence of fluid retention, ascites, jaundice or gastrointestinal bleeding. . . . In addition, [Madera] needs surveillance for liver cancer every [six] months with [a] dedicated liver ultrasound or three phase[] CT scan plus AFP (alpha-fetoprotein) tumor marker.  He should get vaccinated against hepatitis A and hepatitis B . . . .

warranted a downward departure and, for the reasons stated, the court's negative decision was not error.

This brings us to Madera's argument for a downward variance.  Madera claims that the district court failed to give appropriate weight to the section 3553(a) factors, 18 U.S.C. § 3553(a), and that a variant downward sentence to the ten-year minimum was "more than justified."  Madera cites his need for medical care, the non-violent nature of the offense, his status as a first-time offender, his history of stable employment, and avoidance of sentencing disparities among co-defendants.

But the district court heard these arguments at sentencing.  And after explicitly stating that it had "considered all [of the section 3553(a)] sentencing factors," the court referred to relevant circumstances including, for example, Madera's age, education, medical condition, and lack of criminal history.  See United States v. Ruiz-Huertas, 792 F.3d 223, 227 (1st Cir. 2015).

Madera's argument, then, is essentially a disagreement with the court's weighing of these factors; but appraising and comparing such factors is an exercise "largely within the [sentencing] court's informed discretion."  United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011).  Further, some factors that Madera suggests deserved more weight were justifiably balanced by others:  Madera's status as a first-time offender, for

instance, was likely offset by the fact that he was the leader of a heavily-orchestrated drug conspiracy.

Madera also claims that a variance was warranted because of the government's supposedly improper conditioning of the plea offer on Madera agreeing to forego bail. Madera cites as evidence only an e-mail between his own two attorneys based on an alleged prior discussion with the prosecutor. Indeed, the government at multiple points consented to Madera's release on bail for medical examination or treatment. Absent substantial evidence that the condition was ever actually imposed, the district court's failure to entertain such a claim is well-justified.

Lastly, Madera asserts that his sentence was substantively unreasonable. For the reasons already set forth, Madera's within-guideline sentence of 180 months was both plausibly reasoned and within the universe of reasonable sentences. See United States v. Alejandro-Rosado, 878 F.3d 435, 440 (1st Cir. 2017).

**Affirmed.**